## GREEN v. FREDERICK et al.
### No. 974.

Court of Appeal of Louisiana. First Circuit.
May 3, 1932.

Morgan & Simmons, of Covington, for appellants.

H. E. & F. B. Ellis, of Covington, for appellee.

**LE BLANC, J.**

This marks this suit's third appearance before this court. On the first appeal, it was remanded to the district court for the purpose of receiving further testimony on what we considered to be a most vital issue in the controversy. See 13 La. App. 560, 127 So. 132. As a result of the taking of that testimony, the trial judge, who had originally rejected the plaintiff's demand, changed his opinion, and rendered judgment in her favor in the sum of $750. The second appeal was taken from that judgment. It appeared, however, that there was a fatal irregularity in the signing of the judgment, and we found it necessary to annul it and again remand the case for further proceedings according to law. See 17 La. App. 605, 136 So. 783. The defect was corrected on the remand, and the present appeal was taken.

As stated in the original opinion reported in 13 La. App. 560, 127 So. 132, the suit is one for damages for injuries sustained by a wife when, as alleged in her petition, she fell because the rear steps of the dwelling in which she lived, and which was leased from the defendant, gave way, as she was going out of the premises, on April 18, 1928. Two witnesses who had testified for the defendant swore that there were no steps in the rear of the building, whereas plaintiff and her husband swore that there were. We were of the opinion that the decision of the case depended on the issue as to whether there were steps in the back of the house or not, for, as was stated, "it is obvious that, if there were no rear steps, they could not have given way, and that plaintiff could not have fallen therefrom."

We now find that the defendant has filed an exception of no cause of action in this court, based on what is said to be an averment of plaintiff's petition in which she appears to have had full knowledge of the alleged defective condition or vice in the step which resulted in her injury, and that the continued use of same constituted negligence on her part which precludes her recovery. The article of the petition on which the ruling on the exception depends does contain the allegation that the steps were in a dilapidated condition; but there is a qualifying statement contained in the same sentence that they were not in such an apparently dangerous condition that they could not be used. Besides, it may be said that the issue raised by the exception presents a matter of defense rather than of exception, and it therefore might very properly be considered with the merits of the case.

The record comes back to us from the remand, weighted down with the testimony of twenty-six additional witnesses upon the sole question as to whether or not there were back steps to the house in which plaintiff lived at the time of the accident complained of. These witnesses were pretty evenly divided as far as numbers go, and, in spite of the conflict which is bound to exist, the trial judge, who at first had decided against the plaintiff, was "constrained to believe and feel," as he remarks in his written reasons for judgment, "that the preponderance of the testimony," taken in connection with the former evidence in the case, "is in favor of the plaintiff and against the defendant."

It is not disputed that this plaintiff received a serious hip injury which produced a miscarriage of twins. The injury was severe enough at the time of the accident to lead Dr. L. C. Heintz, the attending physician, to believe that there had been a fracture of the femur, the large bone of the thigh. He is the only doctor who saw her, and the only one who testified in the case. He says that, when he was called to attend her, plaintiff gave him a history of having had a fall, and on examination he found a trauma of the left hip, and about two hours afterwards she had the miscarriage. Considering the plaintiff's testimony in connection with that of Dr. Heintz, she is shown not to be inclined to exaggerate. For instance, she says she was confined to her bed two weeks, whereas Dr. Heintz says she could have been three. She doesn't dwell at length on her suffering, nor does she seem to magnify it as is so often done by witnesses in this character of cases; and yet Dr. Heintz says that she might suffer as long as two or three years from the injury to her hip, and that, because of the condition she was in, it naturally would bring on a nervous shock. We make mention of this circumstance in connection with her testimony because the only way in which she could be denied recovery would be to disbelieve her story as to the manner in which the accident happened, and, to do so, we would have to be entirely convinced that there were no back steps on which she could have fallen.

Her husband and daughter, who lived in the house with her, and other relatives who visited them, all swear positively that there were steps in the rear of the house that led from the door on the north side thereof. There was another door on the south end, where there were no steps. The relatives are certain of the presence of the steps, because they say that was the only way in which they

could enter the house; there being no steps in the front. Mrs. W. A. Burris, whose husband was agent for the New Orleans & Great Northern Railroad at Covington, and who lived in a house adjoining that of plaintiff in the rear, testifies positively that there were rear steps. She says that there was nothing to obstruct her view of the back of the house plaintiff lived in, and that she could see the steps. She went to plaintiff's house about half an hour after the accident and saw the broken steps in the rear. Previous to that time, although they were dilapidated, they were not broken. Her testimony corroborates that of the other witnesses who say that these steps were on the north end of the house; that is, the side next to the river. She says further that she saw Roscoe Green, plaintiff's husband, repairing the broken steps either the afternoon of the day of the accident, or the next day. It is undisputed that Mr. Green was the one who repaired the steps the day following his wife's injury, with lumber and material which had been furnished to him by the defendant that same morning.

Ed Overton and Albert Callihan, two negroes, the first of whom was frequently employed to do repair work on houses by defendants in this case, had both sworn to affidavits before the trial of the suit, in which they stated that there were steps to the house. Overton's affidavit refers to the time when he repaired the roof on this particular house, which would have been before Mrs. Green was injured; and Callihan's, to the time the Greens occupied the house. The latter was a close neighbor, and these steps were plainly visible from the rear of his house. True it is that their testimony on the witness stand was very evasive and somewhat contradictory of their sworn affidavits; but, taking into account the fact that they appear to be illiterate and rather ignorant negroes who were perhaps a bit confused in a courtroom surrounding, we are inclined to believe that their true and correct recollection of the matter 's better revealed in the affidavits made by them.

The several witnesses for the defendant all say that there were no rear steps to the house, but that there were front steps.

The first of these witnesses is Dan (or James) McClain, who occupied the house from May to September, 1927; and most of the others are people who visited there between those dates, and their recollection refers to that period of time only. In as much as the Greens only moved into the house on February 27, 1928, and the accident occurred on April 18, 1928, the testimony of all those witnesses is not of much value as positive proof that there were no back steps to the house on the day Mrs. Green was injured. Another witness for the defendant is Mrs. Louis Genestre, who says that she lived next door, and who called the doctor for Mrs. Green when she was hurt. She testifies that there were no back steps, although she does refer to "a piece of new board which looked to have been put on there not long ago," which we take to mean was where plaintiff's witnesses maintain there were steps. This witness, when asked if she lived close to Mrs. Green, answers "Yes, entirely too close," indicating a bit of animus, which makes us believe that her testimony is not entirely without bias. Mrs. Ophelia Tisdale Mapes testified that she occupied the house four days during January, 1928, was familiar with the premises, and says that there were no rear steps, but there were steps in the front. She noted the fact that there were no rear steps when she carried water with which to scrub the house through the back door.

The testimony of Mrs. Tisdale comes the nearest to directly contradicting that of plaintiff's witnesses that there were back steps to this house when the Greens occupied it and at the time the accident took place. It is certainly not enough, of itself, to rebut all of that testimony, some of which impresses us very favorably. Judge Carter, who was district judge at the time of the original trial and who had decided adversely to the plaintiff, and who also was the judge to hear the testimony on the remand of the case, became convinced that he had been in error, and awarded the plaintiff a judgment. His successor, Judge Ott, adopted Judge Carter's finding. These are circumstances which we believe are entitled to great weight in giving consideration to the judgment of the lower court. We believe the issue on which the case was sent back has been correctly decided. Certainly there is no such manifest error, if any, to justify a reversal.

Plaintiff has answered the appeal asking for an increase in the amount of the judgment, and we believe she is entitled to it. We have already referred briefly to the testimony of Dr. Heintz concerning her injury and its attending result. What aggravated it, he says, was the fact that in the miscarriage there were two afterbirths, which is unusual. This, he testifies, caused the loss of very much blood, and therefore much weakening. We have been referred to and find no cases in Louisiana in which damages were allowed for an injury producing miscarriage; but in other jurisdictions, where they have been granted, the amounts run considerably higher than the one of $750 allowed in this case. There is moreover in the present case the injury to the hip, which the doctor says might be felt for two or three years. We have come to the conclusion that an allowance of $2,000 would come nearer compensating the plaintiff for her injury, and the judgment will therefore be increased to that amount.

In her answer to the appeal, plaintiff also

calls attention to an error in the judgment of the lower court in not having correctly designated the corporate name of the defendant. The error was made in the judgment signed by Judge Carter, which we reversed for irregularity as already herein stated. The judgment presently appealed from is the one signed by Judge Ott, district judge, on November 20, 1931. That judgment condemns the St. Tammany Ice & Manufacturing Company, Incorporated, in its proper name, and we see no reason to make the correction requested.

For the foregoing reasons, it is therefore ordered, adjudged, and decreed that the judgment of the lower court be amended by increasing the amount of damages from the sum of $750 to the sum of $2,000, and that, as thus amended, it be affirmed.