402 So.2d 633 (1981)
Darrell DANOS et al.
v.
Terry ST. PIERRE et al.
Nos. 66876, 66882.
Supreme Court of Louisiana.
March 2, 1981.
On Rehearing July 2, 1981.
Rehearing Denied September 4, 1981.
*634 Steven B. Witman, Johnston & Duplass, New Orleans, for applicant, Allstate Ins. Co.
Darryl J. Carimi, Bordelon & Carimi, Gretna, L. Albert Forrest, Roy & Forrest, Ltd., New Iberia, John L. Lanier, Pugh, Lanier & Pugh, Thibodaux, for respondents in 66,882.
L. Albert Forrest, Roy & Forrest, Ltd., New Iberia, John L. Lanier, Pugh, Lanier & Pugh, Thibodaux, for defendant-applicant in 66,882.
Steven B. Witman, Johnston & Duplass, New Orleans, Darryl J. Carimi, Bordelon & Carimi, Gretna, for plaintiff-respondents in 66,882.
DIXON, Chief Justice.
Writs were granted in these cases to review a ruling by the district court, affirmed by the Court of Appeal (383 So.2d 1019 (La.App. 1st Cir. 1980)), that the mother and father of a stillborn child could recover damages for the wrongful death of a fetus. The district court judgment awarded damages to the husband for his injuries, plus $10,000 for "loss of his unborn child." His wife was awarded $20,000 for her "pain, suffering and mental anguish and anxiety," plus $10,000 for the "loss of her unborn child." The only injuries of the mother discussed by the trial judge were a rejected claim for dental injuries and the abdominal injury which resulted in the hospitalization of the mother and the stillbirth of the six or seven month old fetus.
We affirm the judgments of the courts below, except for the awards of $10,000 to each parent for the loss of the unborn child, which we reverse. We hold that the mother may recover damages for an injury which caused a miscarriage, but that there is no right of recovery under C.C. 2315 for the wrongful death of a fetus.
C.C. 2315, the basis for the claims in these cases, has been much amended through the years (see Voss, The Recovery of Damages for Wrongful Death, 6 Tul.L.Rev. 201 (1931)), almost every time in response to a restrictive interpretation by this court limiting recovery to claimants. The predecessor of this article in C.C. 1825 eliminated explanatory words from the 1808 version (Art. 16 p. 320) reproducing Art. 1382 of the Code Napoleon. Those words now form the first sentence of 2315: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." In 1851 this court held that there could be no recovery for the wrongful death of another, in spite of the broad language of the code article. Hubgh v. New Orleans and Carrollton Railroad Co., 6 La.Ann. 495 (La.1851). Act 223 of 1855 amended the article and provided for the survival of a personal injury action "in case of death" to certain beneficiaries. Act 71 of 1884 added "an additional cause of action, the right of the survivors to damages sustained to themselves by reason of the wrongful death of their parent or husband." Wharton, Rights of Children to an Action for Wrongful Death Under Article 2315, 14 Tul.L.Rev. 612, 613 (1940).
In addition to the first sentence, C.C. 2315 now provides:
"...
The right to recover damages to property caused by an offense or quasi offense is a property right which, on the death of the obligee, is inherited by his legal, instituted, or irregular heirs, subject to the community rights of the surviving spouse. The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children; (2) the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and (3) the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child or parent surviving. The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased. A right to recover damages under the provisions *635 of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not.
As used in this article, the words `child', `brother', `sister', `father', and `mother' include a child, brother, sister, father, and mother, by adoption, respectively."
Only one reported decision has been found that was required to address the issue which the present cases raise.[1] In Wascom v. American Indemnity Corp., 348 So.2d 128 (La.App. 1st Cir. 1977), damages were sought for the loss of twin fetuses that were delivered stillborn. The court sustained exceptions of no cause or right of action on the ground that C.C. 2315 does not apply to "the death of a child never born alive." 348 So.2d at 130. This court denied writs, stating that the judgment was correct (an action which does not make law). 350 So.2d 1224 (La.1977). The Court of Appeal in the Wascom case relied upon C.C. 28, which states:
"Children born dead are considered as if they had never been born or conceived." Dicta in a prior decision indicated that Article 28 established the principle that child born dead never acquired "a legal personality distinct from its mother." Youman et al. v. McConnell & McConnell, Inc., 7 La.App. 315, 317 (2d Cir. 1927). Other cases allowing an expectant mother's recovery for damage caused by miscarriages or abortions are consistent with this principle. See, e. g., White v. Juge, 176 La. 1045, 147 So. 72 (1933); Joiner v. Texas & P. Ry. Co., 128 La. 1050, 55 So. 670 (1911); Stewart v. Arkansas Southern R. Co., 112 La. 764, 36 So. 676 (1904); Sibley v. Wilcox, 125 So.2d 49 (La.App. 1st Cir. 1960); Moncrieff v. Lacobie, 89 So.2d 471 (La.App. 1st Cir. 1956); Green v. Frederick, 141 So. 505 (La. App. 1st Cir. 1932).
The plaintiffs contend that Article 28 was not meant to define legal personality for the purposes of personal injury and wrongful death, but that it only applies to inheritance and other property rights. See Note, Wrongful DeathRight of ActionViable Unborn Child, 6 Loy.L.Rev. 157 (1952). It is entirely clear, as all parties apparently concede, that a stillborn fetus has no cause of action for its own injuries. A cause of action is a property right. It may arise by the effect of obligations or through the operation of law. C.C. 870. The ownership of property and rights in property is confined to natural or juridical persons. C.C. 479. Cf. C.C. 493 (1870). In terms of property rights, which include rights of inheritance, a child's legal personality exists from the moment of its conception. See C.C. 29, 953-57 and 1482. However, under Article 28, the effect of acquiring a legal personality is dissolved if the child is not born alive; the stillborn child cannot acquire a cause of action, or any other form of property. Cf. C.C. 955-56 and 1482. A cause of action to recover damages caused by prenatal injury is a property right that remains inchoate until the "person" so injured is born alive. Compare Note, TortsPrenatal Injuries Characterization of Unborn Child as a "Person" Immaterial to Recovery, 20 La.L.Rev. 810 (1960); Comment, Tort Liability for Prenatal Injury, 24 Tul.L.Rev. 435 (1950).
The Code establishes a clear and consistent scheme in regard to the definition of legal personality. From the moment of conception, a child is considered in law as if it had already been born, and is entitled to certain rights and privileges. However, this reputed legal personality is conditioned upon the child's live birth; if the child is not born alive, the effects of its fictional legal personality are considered never to have existed. This scheme was explained in *636 Cooper v. Blanck, 39 So.2d 352 (Orleans App.1923). There, a child was born prematurely as a result of an injury to its mother; it died shortly after its birth. The court concluded that the fact that the injury was inflicted prenatally did not alter the child's right to bring suit, or the parents' right to bring the action after the child's death. The decision was based upon C.C. 29, which states in part:
"Children in the mother's womb are considered, in whatever relates to themselves, as if they were already born ..."
The court specifically ruled that this provision was not limited to inheritance rights. As noted, the article does apply to the acquisition of property rights, and a cause of action is such a right. The court correctly stated that:
"We think it manifest that injury to a child at this period is in contemplation of law, injury to a living child, for which the child if it survives its birth, may maintain an action under art. 2315 of our Code..." 39 So.2d at 360 (emphasis added).
However, the court went on to indulge in the following dictum:
"... and if the child be killed at this period, before its birth, we see no reason why its parents cannot maintain an action for the death of their child." 39 So.2d at 360.
It is also argued that, since Article 28 predates the enactment of a wrongful death provision in Louisiana, the article can have no application to cases of wrongful fetal death. See Stone, Tort Doctrine, 12 Louisiana Civil Law Treatise § 63 (1977). While scholarship on the source provisions of the law is enlightening, more recent legislative action should not be ignored. In 1976 Senate Bill 261 was proposed. The bill's avowed purpose was:
"To amend and reenact Article 2315 of the Louisiana Civil Code, relative to liability for acts which cause damage, to provide that the terms `man,' `another' and `person' shall include a human being from the moment of conception."
The bill was referred to the Committee on the Judiciary, but was never enacted.[2] Had the bill become law, an action for wrongful fetal death would have been permitted.[3] The purpose of the proposed amendment was precisely thatto allow recovery "for the wrongful death of a fetus occurring at any stage of its development." Legislative Symposium, 37 La.L.Rev. 89, 116 (1976). The fact that the amendment was proposed but not enacted is at least a strong indication that the legislature is aware that C.C. 2315, in its present form, and as interpreted by the courts, does not allow a wrongful death action in cases of fetal death. The failure to adopt the proposal precludes any inference that a legislative intent favoring recovery exists in cases of wrongful fetal death; instead, the opposite inference should be made.
We are constrained by the clear and explicit provisions of existing law to deny recovery in cases of wrongful fetal death.
At any rate, the plain words and clear meaning of C.C. 28 and 29 should not be ignored, and must be considered along with C.C. 2315. The mother of a child born dead can recover her damages for the injury to herself and the fetus. The stillborn child has no rights, and can transmit none.
Three other defendants in this case were passengers in the car driven by the defendant. One of these was the owner. The trial judge concluded that all of the passengers were jointly responsible for the negligent operation of the car, because they allowed the defendant to drive even though they were aware that he was intoxicated. *637 The Court of Appeal reversed this decision in part after finding that, although the owner of the vehicle was liable for the damages caused by entrusting the car to an incompetent driver, the passengers were under no corresponding duty to protect against such risks. Danos v. St. Pierre, supra. We find no error in this ruling, nor in the ruling that, although proper service was not made on one of the parties, any objection to the court's jurisdiction was waived. C.C.P. 6 and 7. Nor do we find merit in the argument that damages awarded were excessive.
For these reasons, the judgments of the courts below awarding plaintiffs Darrell Danos and Gayle Danos each $10,000 are reversed; otherwise, the judgments are affirmed, and plaintiffs are cast with the costs of the proceedings in this court.
CALOGERO, J., dissents for reasons assigned by LEMMON, J.
DENNIS, J., dissents for reasons assigned by LEMMON and LOTTINGER, JJ., of the Court of Appeal.
LEMMON, J., dissents and will assign reasons.

ON REHEARING
LEMMON, Justice.
We granted rehearing to reconsider the principal issue in this casewhether parents may recover the damages they sustain when a tortfeasor's fault causes a prenatal injury to a fetus who is subsequently born dead because of the injury.[1]
Mrs. Darrell Danos' six-month old fetus was born dead because the maternal placenta separated prematurely when she was involved in an automobile accident caused by defendants. Mr. and Mrs. Danos filed suit, seeking recovery of certain itemized damages, including the "loss of his (her) unborn baby girl". The trial court granted recovery, and the court of appeal affirmed. 383 So.2d 1019.
Defendants rely on earlier decisions of the intermediate courts, including Youman v. McConnell and McConnell, 7 La.App. 315 (2d Cir. 1927) and Wascom v. American Indem. Corp., 348 So.2d 128 (1st Cir. 1977), cert. den. 350 So.2d 1224, which held that parents have no cause of action to recover damages for the wrongful death of a child which is born dead. The intermediate court's decision in this case is clearly contrary to these decisions.[2]
C.C. art. 2315, when considered alone, would permit recovery of such damages. The elements of fault, damage and causation are satisfied when there is proof that the tortfeasor's fault caused the parents to suffer the loss of a child who, but for the fault, more probably than not would have been born normally. Defendants point out, however, that the third paragraph of C.C. art. 2315, authorizing recovery of damages (other than property damages) by certain enumerated relatives if the injured person dies, contemplates damages for the wrongful death of a person. They accordingly argue, citing C.C. art. 28, that since a child born dead is considered as if it had never been born or conceived, the loss suffered by the parents in this case was not the loss of a legal person. In essence defendants are asserting that C.C. art. 28 precludes recovery for the wrongful death of a child born dead, even if damages were otherwise recoverable under C.C. art. 2315.
*638 The Legislature had no such intention in enacting C.C. art. 28.[3] At the time the Legislature initially adopted C.C. art. 28 in 1808, no recovery for wrongful death was allowed because of judicial decisions, and one cannot fairly infer that the article was intended to limit recovery for wrongful death.[4] Therefore, the decision of whether or not to recognize the cause of action asserted in this case (for damages which are clearly recoverable by the literal terms of the fountainhead article of Louisiana tort law) is one to be made, not on the basis that the original legislative intent of C.C. art. 28 was to preclude recovery of such damages, but on the basis of a logical resolution of a problem in which the Legislature has not specifically expressed its intent to authorize or prohibit such recovery.
There are numerous persuasive considerations favoring the allowing of recovery. It would be totally illogical and arbitrary for the cause of action to depend on whether the child lives outside the womb for a few minutes.[5] The loss to the parents of a child who otherwise would have been born normally is substantially the same, whether the tortfeasor's fault causes the child to be born dead or to die shortly after being born alive, and a cause of action for the loss should be recognized in either event, at least in the absence of specific legislation expressing a contrary intent.[6] Moreover, a decision not to recognize a cause of action when the child is born dead would benefit the tortfeasor who causes a more serious injury, since the tortfeasor would have to pay damages if his fault causes a child to be born disabled, but would not have to pay any damages if his fault causes prenatal death.
Another reason for recognizing the cause of action is the recent legislative pronouncement in Acts 1976, No. 256 that a human being exists from the moment of fertilization and implantation. That legislation to some extent indicates a legislative favoring of applying laws such as wrongful death articles to unborn children.
On the other hand, the arguments against recognition of the cause of action are not as logical or persuasive. Difficulty in proof of causation and damages and the possibility of fraudulent claims is not a valid reason for denying recognition of an otherwise valid cause of action. The denial of valid claims in order to discourage fraudulent ones and to avoid difficult problems in determining causation and fixing damages not only is totally illogical, but also disregards the very essence of the judicial process.
The argument that an unborn child is part of its mother's anatomy was rejected in Johnson v. South N. O. Lt. & Traction Co., No. 9,048 (Orl.App.1923), cert. den. No. 26,443 (La.1924). The court reasoned:
"(T)he theory of the defendant is that an unborn infant is not a child within the meaning of that statute, and that any one can abuse it, maim it, disfigure it, cripple it, and even kill it, with impunity, as far as pecuniary redress is concerned; that the infant is without action of its own and that the mother's only redress is the *639 physical injury she might endure in the process of wounding or killing the infant and that is the jurisprudence of the country.

* * * * * *
"The argument of the defendant is that the infant before it is born is not a child, not a human being, that it is only a thing a part of the anatomy of the mother, as are her organs. We cannot accept that theory. We believe the infant is a child from the moment of its conception although life may be in a state of suspended animation the subject of love, affection, and hope and that the injury or killing of it, in its mother's womb, is covered by the statute of 1884 and gives the bereaved parents a right of action against the guilty parties for their grief, and mental anguish." (Emphasis supplied.)
We conclude that the arguments favoring recovery more fully satisfy logical reasoning and application of the natural law. Since we find nothing in the Civil Code which expressly or impliedly denies recovery to parents for this very real loss, and since the fault which causes the fatal injury to the child also causes the loss to the parents, we conclude that parents should be entitled to recover this item of damages.
The judgments of the lower courts are affirmed.
AFFIRMED.
MARCUS, J., dissents, adhering to decision on original hearing.
DIXON, C. J., dissents with reasons.
DENNIS, J., joins in the opinion of the court and assigns additional reasons.
WATSON, J., dissents, believing that the original opinion was correct.
DENNIS, Justice, assigning additional concurring reasons.
Although I join fully in this court's decision, I do so additionally for the reasons expressed by Judge Lottinger in his excellent and scholarly concurring opinion in this case in the court of appeal. 383 So.2d 1019, 1024 (La.App. 1st Cir. 1980).
DIXON, Chief Justice (dissenting).
I respectfully dissent.
The question here is whether the wrongful death action is available when an injury to a fetus causes its death before it is born.
The plain answer is that C.C. 2315 does not provide for such recovery. An appropriate interpretation of C.C. 28 is relevant for a correct determination of the issue. Of course, the "legislature had no such intention" as blocking recovery for the wrongful death of a fetus when it enacted C.C. 28 in 1808. Parliament did not enact the first wrongful death statute until Lord Campbell's Act of 1846. It was not until 1851, in Hubgh v. New Orleans and Carrollton Railroad Co., 6 La.Ann. 495, that the first wrongful death action in Louisiana was litigated (Voss, The Recovery of Damages for Wrongful Death at Common Law, at Civil Law, and in Louisiana, 6 Tul.L.Rev. 201 (1931)), in spite of the fact that wrongful death actions were known in early Roman, French and Spanish law. This court rejected the widow Hubgh's demands, based on the common law.
C.C. 2315 says: "The right to recover all other damages caused by an offense or quasi offense, the injured person dies, shall survive ..." (Emphasis added). If a stillborn fetus is an "injured person," plaintiffs are entitled to recover. This court has not so held until today. Nor did the statutes define a fetus as a person until Act 256 of 1976 amended R.S. 14:2, which defines terms used in the Criminal Code, only.
In the civil law, our code has provided a consistent and symmetrical concept for the relationships of persons with unborn children, with no indication that an exception should be made in the case of the wrongful death of a fetus.
I would adhere to our original opinion.
NOTES
[1] In an unreported decision, wrongful death recovery in similar circumstances was apparently allowed. Johnson v. South N. O. Light & Traction Co., (No. 9048) (La.App.Orl.Cir.1923). The refusal of writs also went unreported. (No. 26443) (La.1924). Other decisions indulged in dicta in treating the issue. See, e. g., Valence v. Louisiana Power & Light Co., 50 So.2d 847 (La.App.Orl.Cir.1951); Cooper v. Blanck, 39 So.2d 352 (La.App.Orl.Cir.1923) (published in 1949).Heins v. Guzman (unreported) (No. 9484) (La.App.Orl.Cir.1924). See also Note, TortsPrenatal InjuriesLouisiana Law, 12 La.L.Rev. 519 (1952).
[2] This bill was a companion to Senate Bill 260, which was enacted, amending R.S. 14:2(7) to define "person" as including a human being "from the moment of fertilization and implantation..." Act 256 (1976). See State v. Brown, 378 So.2d 916 (La.1979), for a discussion of the legislative intent underlying the amendment.
[3] There are, of course, constitutional limits to such an action, involving a woman's right to terminate a pregnancy. A thoughtful cautionary note can be found in 37 La.L.Rev. at 117, nn. 33-35 and accompanying text.
[1] Our grants of certiorari to two different insurers (see 384 So.2d 985) did not limit review to this issue. However, inasmuch as the other assignments of error do not raise issues in which analysis is necessary for the proper development of the law, and since the court of appeal reached the correct result in deciding these issues, we limit our discussion to the stated issue.
[2] There were contrary holdings or language in dicta in other decisions. See Stewart v. Arkansas So. R. Co., 112 La. 764, 36 So. 676 (1904); Joiner v. Texas & Pac. Ry., 128 La. 1050, 55 So. 670 (1911); Cooper v. Blanck, 39 So.2d 352 (La.App.Orl.Cir.1923); Valence v. Louisiana Power & Light Co., 50 So.2d 847 (La.App.Orl. Cir.1951); and Sibley v. Wilcox, 125 So.2d 49 (La.App. 1st Cir. 1960).
[3] While the author in Stone, Louisiana Civil Law Treatise-Tort Doctrine, § 63 (1977) suggests that the 1884 amendment to C.C. art. 2315, providing expressly for wrongful death actions, arguably amended C.C. art. 28 to remove wrongful death actions from the restriction of the earlier enacted article, the greater probability is that the Legislature did not consider the problem either in originally enacting C.C. art. 28 or in amending C.C. art. 2315 in 1884.
[4] For a detailed history of C.C. art. 28 and its sources, see Judge Lottinger's concurring opinion in the decision by that intermediate court in the present case. 383 So.2d at 1024 and following.
[5] The fact may well have importance in inheritance matters, but is without relevance to a decision of whether or not to recognize a cause of action for wrongful death.
[6] The arbitrariness would be vividly demonstrated in the case of prenatal injury to twins, after which one is born dead and the other is born alive, but dies after several minutes. Under defendants' approach the parents could recover for the wrongful death of one, but not the other, and there is simply no justification for the distinction.