676 So.2d 632 (1996)
Patrick M. WARTELL & Kristine Wartell, Plaintiffs-Appellants-Appellees
v.
WOMAN'S AND CHILDREN'S HOSPITAL, INC., Defendant and
The Louisiana Patient's Compensation Fund, Defendant-Appellee-Appellant.
No. 95-736.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1996.
*633 Jacque Berchmans Pucheu Jr., Eunice, for Patrick Wartelle and Kristine Wartelle and Patrick Wartelle and Kristine Wartelle, pro se.
Stephen J. Oats, Edgar D. Gankendorff, Oats & Hudson, Lafayette, for the Louisiana Patient's Compensation Fund.
Before KNOLL, THIBODEAUX, SAUNDERS, WOODARD and DECUIR, JJ.
SAUNDERS, Judge.
The issue in this appeal is quantum. Defendants contest a general damages award of $250,000.00 in connection with the emotional trauma and mental anguish suffered by the parents of a stillborn fetus. Plaintiffs answer defendants' appeal. They seek an increase in damages for their nascent daughter's survival action, which the trial court dismissed, and Lejeune damages for their having witnessed the act that caused her stillbirth. We reverse and remand the trial court's dismissal of the parents' claim under La.Civ.Code art. 2315.1. We also reverse the trial court's failure to recognize the parents' claim for damages under La.Civ.Code art. 2315.6 and award damages of $5,000.00 for their suffering.

FACTS
The facts and procedural history of this dispute are not in question. Pregnant and in labor, Mrs. Wartell was admitted to Woman's and Children's Hospital the evening of September 19, 1992. Plaintiffs allege that the removal of a fetal heart monitor from Mrs. Wartell for approximately one and one-half hours contributed to the fetus's stillbirth. According to plaintiffs, the fetus's trauma, confirmed by a scalp electrode applied to the fetus in the vicinity of 1:00 a.m. on September 20, 1992, would have been discovered in time to save the child had the hospital adequately monitored the fetus's heart.
On August 26, 1993, the Wartell's sued the hospital and the Louisiana Patient's Compensation Fund for damages in excess of $100,000.00 for the wrongful death of their first child, seeking damages under La.Civ.Code arts. 2315.2 and 2315.6. In addition, plaintiffs sought damages under La.Civ.Code art. 2315.1 for any conscious pain and suffering their child might have sustained.
By Supplemental and Amending Petition, plaintiffs sought recognition that the hospital's payment of $100,000.00 established its legal liability. Although this contention was disputed by the Patient's Compensation Fund,[1] the motion was granted by the trial court August 30, 1994. La.R.S. 40:1299.44(C)(5). Stuka v. Fleming, 561 So.2d 1371 (La.1990), cert. denied, 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990); Koslowski v. Sanchez, 576 So.2d 470 (La. 1991). Thus, liability of the Patient's Compensation Fund would not be an issue at trial. The sole question would be whether plaintiffs' damages exceeded the $100,000.00 already tendered.
Shortly before trial, defendants filed a motion in limine in addition to a peremptory exception of no cause of action, maintaining that because the fetus was stillborn, her parents could not pursue a survival action under La.Civ.Code art. 2315.1. Additionally, because the hospital's liability was deemed legally conceded, the trial court granted defendants' motion in limine, which sought to exclude the testimony of the nurses on the floor on the evening in question, accepting *634 defendants' position that while the nurses had knowledge as to the hospital's liability, they could add nothing on the question of quantum.
The trial took place on November 22, 1994. Witnesses testifying for the plaintiffs included plaintiffs, Mr. and Mrs. Wartell, Ms. Rae Logan, who is Mrs. Wartell's mother, and Dr. Christine E. Angelloz, Ph.D., a therapist retained by the Wartells to help them deal with their tragic loss. No evidence was introduced by defendants.
After taking the matter under advisement, the trial court rendered judgment in favor of plaintiffs in the amount of $250,000.00, plus special damages of $8,993.37 and court costs. In its oral reasons, the trial court was convinced by Dr. Christine Angelloz's deposition and video tape testimony that both of the Wartells continued to suffer from their losses. According to the trial court, "Mr. Wartell particularly had an unresolved grief reaction, or was suffering from an unresolved grief reaction," and even through the date of trial, he "was between shock and denial and depression in terms of the stages" of grieving, with similar symptoms understandably shown by Mrs. Wartell, who, as of the date of trial, was "between shock and denial and anger and protest." Finally, the trial court observed in its oral reasons that the findings of Dr. Angelloz were audible and visible through the couple's testimony and demeanor, "and both have impressed the Court as suffering great anxiety still to this date as a result of the expected birth of their first child which ended in still birth."

GENERAL DAMAGES
Defendants appeal the trial court's award of general damages of $250,000.00 following the judgment of the trial court, subject to a credit for the $100,000.00 already paid by Woman's and Children's Hospital. Essentially, they maintain that the trial court placed too much emphasis on Dr. Angelloz's testimony because she had not treated the Wartells for a little more than one year prior to trial. Defendants further maintain that the trial court erred in failing to take into account the Wartells' ability to have another child and become pregnant with another prior to trial. Finally, defendants argue that the trial court placed too much emphasis on the fact that Mrs. Wartell, a television journalist, was a "media star," and overlooked the greater than usual post-traumatic support she received from members of her community. Finally, defendants maintain that much of Mr. Wartell's stress came from his position as a trial litigation attorney, and not from his loss of a child.
In light of plaintiffs' circumstances, according to defendants, the trial court abused its discretion in awarding more than the $48,000.00 per parent, which they maintain is the average general damage award to plaintiffs in Louisiana who have lost a stillborn child.
Our role as an appellate court in reviewing general damages is not to decide what we consider to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. "Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration." Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
Thus, before we conclude that an award for injuries is excessive, we are obliged to first take into consideration the particular effects of the particular injuries on these particular plaintiffs, Id., citing Reck v. Stevens, 373 So.2d 498 (La.1979); that is, rather than use as a scale the prior awards in cases with generically similar injuries to determine whether the trier of fact has abused its discretion, it is preferable that we determine whether the award for the injuries sustained by these particular plaintiffs constituted a clear abuse of the "much discretion" vested in the trier of fact. Youn, 623 So.2d 1257, citing Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such determination of an abuse of discretion is a resort to prior awards appropriate, and then only for the limited purpose of determining the highest or lowest point which is *635 reasonably within the factfinder's discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Having reviewed the record and the arguments, we cannot say that the trial court abused its discretion, in light of evidence suggesting the couple's understandable anticipation of their first child's birth, responsible preparation for the event, uncomplicated and promising obstetrical history, and the demonstrated post-traumatic effects of their losses. Finally, we cannot say that the trial court abused its much discretion in determining that the couple's broad post-traumatic support was de minimis compared to the couple's suffering, or that the couple's suffering was multiplied by the very public nature of Ms. Wartell's pregnancy.[2]
Therefore, the general damage award of $250,000.00, less a credit for the $100,000.00 previously tendered by Woman's and Children's Hospital, is affirmed.

VIABLE ACTION UNDER LA.CIV.CODE ART. 2315.1 FOR A STILLBORN CHILD
Plaintiff's maintain that the trial court erred in maintaining defendants' exception of no cause of action with respect to their stillborn child's survival claim.
In support of their argument, plaintiffs refer this court to statutory and constitutional authority. They cite La.Civ.Code art. 26:
Art. 26. Unborn child
An unborn child shall be considered as a natural person for whatever relates to its interests from the moment of conception. If the child is born dead, it shall be considered never to have existed as a person, except for purposes of actions resulting from its wrongful death.
They further observe that Comment (d) to the provision provides, in part, that while the fiction of a fetus' personality from the moment of conception does not attach when the infant is born dead, the stillborn child nonetheless is considered as a person for purposes of wrongful death actions.
Additionally, plaintiffs observe that La. R.S. 40:1299.35.0 and 40:1299.35.1(2) clearly suggest that the unborn child in this state by specific legislative intent is to be considered to be "a human being from the time of conception." Thus, according to plaintiffs, it follows that like any other human being, after conception the fetus is entitled to a survival action under La.Civ.Code art. 2315.1.
In response, defendants cite Danos v. St. Pierre, 402 So.2d 633 (La.1981) and Diefenderfer v. La. Farm Bureau Mutual Insurance Company, 383 So.2d 1032, (La.App. 1 Cir.), writ granted, 384 So.2d 985 (La.1980), for the proposition that the laws of this state do not offer the parents of the full-term unborn a survival action when the fetus is stillborn, regardless of whether the fetus' stillbirth results from the tortfeasor's negligence.
Art. 2315.1. Survival action
A. If a person who has been injured by an offense or quasi-offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi-offense, shall survive for a period of one year from the death of the deceased in favor of:
* * * * * *
(2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving; and
* * * * * *
La.Civ.Code art. 2315.1.
To this court's knowledge, the question of whether a fetus on the threshold of life has a right of action for being deprived of its imminent miracle is res nova in this state. The answer obviously depends on whether Louisiana law defines the being to constitute a person.
Art. 12. Ambiguous words
When the words of a law are ambiguous, their meaning must be sought by examining *636 the context in which they occur and the text of the law as a whole.
Art. 13. Laws on the same subject matter
Laws on the same subject matter must be interpreted in reference to each other.
La.Civ.Code arts. 12 and 13.
Although the issue is res nova with respect to survival actions falling under La.Civ. Code art. 2315.1, the question of whether a stillborn child constitutes a "person" has been considered under similar circumstances before. For example, in the Danos opinion cited by defendants, the Louisiana Supreme Court granted writs in two companion cases to determine whether "the mother and father of a stillborn child could recover damages for the wrongful death of a fetus," Danos, 402 So.2d at 634 and, in its original opinion, reversed the court of appeal and set forth expansive dicta answering this question in the negative[3]; however, on rehearing, the supreme court reversed its initial conclusion that the parents had no wrongful fetal death action by which they could seek redress for their own anguish.
There are numerous persuasive considerations favoring the allowing of recovery. It would be totally illogical and arbitrary for the cause of action to depend on whether the child lives outside the womb for a few minutes. The loss to the parents of a child who otherwise would have been born normally is substantially the same, whether the tortfeasor's fault causes the child to be born dead or to die shortly after being born alive, and a cause of action for the loss should be recognized in either event, at least in the absence of specific legislation expressing a contrary intent. Moreover, a decision not to recognize a cause of action when the child is born dead would benefit the tortfeasor who causes a more serious injury, since the tortfeasor would have to pay damages if his fault causes a child to be born disabled, but would not have to pay any damages if his fault causes prenatal death.
Another reason for recognizing the cause of action is the recent legislative pronouncement in Acts 1976, No. 256 that a human being exists from the moment of fertilization and implantation. That legislation to some extent indicates a legislative favoring of applying laws such as wrongful death articles to unborn children.
On the other hand, the arguments against recognition of the cause of action are not as logical or persuasive. Difficulty in proof of causation and damages and the possibility of fraudulent claims is not a valid reason for denying recognition of an otherwise valid cause of action. The denial of valid claims in order to discourage fraudulent ones and to avoid difficult problems in determining causation and fixing damages not only is totally illogical, but also disregards the very essence of the judicial process.
The argument that an unborn child is part of its mother's anatomy was rejected in Johnson v. South N.O. Lt. & Traction Co., No. 9,048 (Orl.App.1923), cert. den. No. 26,443 (La.1924). The court reasoned:
"(T)he theory of the defendant is that an unborn infant is not a child within the meaning of that statute, and that any one can abuse it, maim it, disfigure it, cripple it, and even kill it, with impunity, as far as pecuniary redress is concerned; that the infant is without action of its *637 own and that the mother's only redress is the physical injury she might endure in the process of wounding or killing the infant and that is the jurisprudence of the country.
"The argument of the defendant is that the infant before it is born is not a child, not a human being, that it is only a thing a part of the anatomy of the mother, as are her organs. We cannot accept that theory. We believe the infant is a child from the moment of its conception although life may be in a state of suspended animation the subject of love, affection, and hope and that the injury or killing of it, in its mother's womb, is covered by the statute of 1884 and gives the bereaved parents a right of action against the guilty parties for their grief, and mental anguish." (Emphasis supplied.)
Danos, 402 So.2d at 638-39 (on rehearing) (notes omitted).
While on rehearing, the supreme court expressly limited its consideration of the wrongful death, its opinion's logic pertaining to that issue seems equally compelling when considered in the context of a survival action by an infant, for it would seem illogical to grant to parents recovery based on the life of an unborn baby, yet to deny the survival action to the unborn infant whose life has been snuffed.[4] If a wrongful death action can be made out by the surviving father and mother on the basis that their anticipated child constitutes a "person" under La.Civ. Code art. 2315.2[5], certainly that fetus can be no less than a "person" for purposes of a survival action under La.Civ.Code art. 2315.1. See generally, Judge Lottinger's concurrence in Diefenderfer v. Louisiana Farm Bureau Mutual Insurance Company, 383 So.2d 1032.[6]
Thus, we conclude that the trial court erred in granting defendants' peremptory exceptions dismissing a virtual-born's survival action inherited by her parents. Because no evidence was received as to the inchoate child's damages in light of the trial court's dismissal of the plaintiffs' 2315.1 claim, a remand is required for an assessment of the damages arising from her probable trauma.

DAMAGES UNDER LA.CIV.CODE ART. 2315.6
Plaintiffs also seek damage under La. Civ.Code art. 2315.6.
Art. 2315.6. Liability for damages caused by injury to another
A. The following persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury:
* * * * * *
(2) The father and mother of the injured person, or either of them.
* * * * * *
B. To recover for mental anguish or emotional distress under this Article, the *638 injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable. Damages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article.
La.Civ.Code art. 2315.6.
Defendants strongly contest plaintiffs' claims under La.Civ.Code art. 2315.6. They maintain that the Wartells' case is analogous to ones involving the mismanagement of the remains of a deceased, where such relief is not available. See Dufour v. Westlawn Cemeteries, Inc., 94-81 (La.App. 5 Cir. 6/28/94); 639 So.2d 843.
This contention is premised upon the notion, rejected above, that the Wartells' gestating daughter was not a "person." For the reasons articulated in Danos, 402 So.2d 633, and the other authority cited above, we reject the premise of defendants' argument.
We conclude that a stillborn child, at least one carried to full term, is a person for the purposes of La.Civ.Code art. 2315.6.
The event witnessed by the plaintiffs stating a claim under La.Civ.Code art. 2315.6 need not be cataclysmic. By the very terms of La.Civ.Code art. 2315.6, the event need only be injurious or worse, provided the aggrieved plaintiffs also make the requisite showing under La.Civ.Code art. 2315.6(B). As this court observed in Trahan v. McManus, 94-167 at pp. 5-6 (La.App. 3 Cir. 3/22/95); 653 So.2d 89, 92:
To state a cause of action under La.Civ. Code art. 2315.6, a party must have the requisite temporal and geographical nexus as set forth in 2315.6(A). The law does not require that the event be sudden or dramatic. Rather than limit the reach of La. Civ.Code art. 2315.6 to only catastrophical or precipitous events, the law instead uses other perimeters, rendering the nature of the event per se largely immaterial. [Footnote omitted.]
Consequently, because it would appear from the record that one or both of the Wartells witnessed the removal of the heart monitor, one or both have stated a cause of action under La.Civ.Code art. 2315.6. Having reviewed the record, we hold that an award of $5,000.00 is justified under the circumstances.

DECREE
For the foregoing reasons, the general damages award is amended to add La.Civ. Code art. 2315.6 damages of $5,000.00, but is otherwise affirmed. The trial court's judgment granting defendants' peremptory exception dismissing plaintiffs' survival action is reversed and that part of the case is remanded to the trial court for proceedings consistent with the views expressed in this opinion, at defendants' costs. Costs of this appeal assessed to defendants.
AFFIRMED AS AMENDED IN PART, REVERSED IN PART AND REMANDED IN PART.
KNOLL, J., concurs in part and dissents in part and assigns written reasons.
THIBODEAUX, J., concurs and assigns written reasons.
WOODARD, J., concurs in part and dissents in part for the reasons assigned by KNOLL, J.
THIBODEAUX, Judge, concurring.
I agree with the majority opinion in all respects. However, I concur only to express my view that the general damages awards under La.Civ.Code art. 2315.2 for the wrongful death actions should be increased to $200,000.00 per parent and the damage award under La.Civ.Code art. 2315.6 (Lejeune damages) should be fixed at $50,000.00 for both parents.
KNOLL, Judge, concurring in part and dissenting in part.
I fully agree that the general damage awards are not excessive. In my view, I find the general damage awards on the low side because of the special circumstances in this case. The fact that Kristine Wartelle was a *639 TV personality and highlighted her prenatal care on her TV program, which concluded in a baby shower for her being televised, are factors which served to compound her grief. Likewise, Patrick Wartelle's grief over the loss of his child cannot be minimized because he is a successful trial litigator. Under the well established doctrine of taking your victims as you find them, these factors only serve to heighten the general damage awards. While I find the general damage awards on the low side, I cannot say the awards were abusively low. Because of the great restraint placed upon a reviewing court under the manifest error rule, I am constrained to affirm these awards.
I fully agree that it was clear error for the trial court to grant the defendant's peremptory exception which dismissed the stillborn child's survival action claim. In my view the law is very clear that "an unborn child shall be considered as a natural person for whatever relates to its interest from the moment of conception," (emphasis added) to include the right to bring a survival action. For damages under the survival action claim, we are not bound by the constraints of the manifest error rule and we may fix this award de novo. In this respect, the majority prefers to remand. I find the record adequate enough to make this award and would not remand.
Finally, I agree that the Wartelles are clearly entitled to mental anguish and emotional distress damages under La.Civ.Code art. 2315.6. In my view, I find the majority's award for these damages only a "token" award and not a true and meaningful award. It is hard for me to visualize a set of facts more painful than the facts before us that would justify a higher award. I find the majority overlooks the fact that during the 9 months pregnancy, a bonding between the living baby and parents occurred. Kristine Wartelle felt her baby's movements and nurtured her baby through proper prenatal care. It is a scientific fact that a baby in the womb knows their mother from the mother's body sounds, e.g., heart beat, voice, and other body sounds and vibrations typical of the mother. Patrick Wartelle prided himself that he fathered the living unborn child and helped prepare for their baby's delivery and nursery at home. Kristine Wartelle's body grew as her living baby grew in size. A momentum of love and happiness was building with each passing day between the Wartelle's and the expected delivery of their baby. Through an admitted act of negligence, their baby was born dead. The baby died within Kristine Wartelle's body as the baby's father helplessly watched. This accident is especially heart rending since it occurred within Kristine Wartelle's body. This is a tragic accident that both parents suffered and especially Kristine Wartelle. The "token" award by the majority is wrong and woefully low.
For these reasons I respectfully concur in part and dissent in part.
NOTES
[1] While plaintiffs maintain that this $100,000.00 was paid by the hospital due to its failure to monitor, in violation of the hospital's protocols as well as standards established by the American College of Obstetrics and Gynecology, defendants maintain that they settled their portion of the dispute simply to avoid adverse publicity.
[2] The testimony indicates that Mrs. Wartell's television station followed her pregnancy through the last few months, covering her baby shower attended by all of her television station co-workers, using Mrs. Wartell as a subject in a public awareness series on prenatal care and general childbirth options.
[3] The original majority opinion in Danos, applying substantively similar predecessors to present La.Civ.Code arts. 25, 26 and 2315.1, stated as follows:

The plaintiffs contend that Article 28 was not meant to define legal personality for the purposes of personal injury and wrongful death, but that it only applies to inheritance and other property rights. See Note, Wrongful Death Right of Action Viable Unborn Child, 6 Loy. L.Rev. 157 (1952). It is entirely clear, as all parties apparently concede, that a stillborn fetus has no cause of action for its own injuries. A cause of action is a property right. It may arise by the effect of obligations or through the operation of law. C.C. 870. The ownership of property and rights in property is confined to natural or juridical persons. C.C. 479. Cf. C.C. 493 (1870). In terms of property rights, which include rights of inheritance, a child's legal personality exists from the moment of its conception. See C.C. 29, 953-57 and 1482. However, under Article 28, the effect of acquiring a legal personality is dissolved if the child is not born alive; the stillborn child cannot acquire a cause of action, or any other form of property. Cf. C.C. 955-56 and 1482....
Danos, 402 So.2d at 635.
[4] This precise question was raised in Diefenderfer v. La. Farm Bureau Mutual Insurance Company, 383 So.2d 1032 (La.App. 1 Cir.), writs granted, 384 So.2d 985 (La.1980), a companion case to Danos, but was apparently settled before Danos was rendered.
[5] Art. 2315.2. Wrongful death action

A. If a person dies due to the fault of another, suit may be brought by the following persons to recover damages which they sustained as a result of the death:
* * * * * *
(2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving; and
* * * * * *
La.Civ.Code art. 2315.2.
[6] As noted above, the supreme court granted writs in Diefenderfer, but the case was apparently settled before the supreme court reached the question of whether a survival action can be stated by the parents of a stillborn child.