KUHN, J.,
concurring.
I,More than two decades ago, the Louisiana legislature enacted La. C.C. art. 26, addressing the legal status of the unborn child. Because our state constitution’s provisions are not grants of power, but instead are limitations on the otherwise plenary power of the people of the state, exercised through the legislature, our state legislature may enact any legislation that our state constitution does not prohibit. In re State ex rel. A.J., 09-0477 (La.12/1/09), 27 So.3d 247, 266. Thus, in this instance, I do not write to challenge the authority of the legislature in enacting La. C.C. art. 26, but to express my concerns regarding the manner in which this legislation addresses the unborn child. In particular, the legislative pronouncement that a “child ... born dead ... shall be considered never to have existed as a person ...” is offensive to matters of conscience.[1] See La. C.C. art. 26. (Emphasis added.)
In Wartelle v. Women’s and Children’s Hosp., Inc., 97-0744 (La.12/2/97), 704 So.2d 778, 780, the supreme court sanctioned the terminology employed in Article 26, stating that “person” is employed in a technical sense:
The Louisiana Civil Code’s refusal to accord unconditional legal personality to a fetus before live birth constitutes no moral or philosophical judgment on the value of the fetus, nor any comment on its essential humanity. Rather, the classification of “person” is made solely for the purpose of facilitating determinations about the attachment of legal rights and duties. “Person” is a term of art, as |2explained in A.N. Yiannopoulos, Louisiana Civil Law Systems § 48 (1977):
According to the Romanist tradition, rights and duties attach to, or are conferred by law upon, “persons.” Civilian terminology thus employs the word person in a technical sense to signify a subject of rights or duties.
Despite this rationale, I am guided and compelled by my conscience to express that statutory law cannot be separated from concepts of natural law and should not “ignore the principles of natural ethics” rooted in the nature of the human person.[2] I reject the legal fiction that “personhood depends on recognition by the law.”[3] The democratic structures of *369 our political system “would be quite |,o,fragile were its foundation not the centrality of the human person.” [4] From the first moment of existence, a human being must be recognized as a person. Otherwise, what is a fetus? “A nonentity, a nothing, a mass of lifeless matter ... [?]”[5] Danos v. St Pierre, 383 So.2d 1019, 1031 (La.App. 1st Cir.1980) (Lottinger, J., concurring in the court’s holding that a mother and father of a stillborn child could recover damages for the wrongful death of a fetus), affirmed, 402 So.2d 633 (La.1981)(on rehearing). By providing that a “child ... born dead ... shall be considered never to have existed as a person ...,” the legislature ignores these fundamental principles, resulting in “an attack on the inviolable dignity of human life.”[6] The legislature could have otherwise limited the rights of recovery attributable to unborn children without denying their existence.

.Conscience is an interior faculty that guides our moral judgments. See John H. Garvey and Amy V. Coney, Catholic Judges in Capital Cases, 81 Marq. L.Rev. 303, 323 (1998). See also Black’s Law Dictionary 303 (6th ed.1990), which defines .‘'conscience” in pertinent part as "[t]he sense of right and wrong inherent in every person by virtue of his existence as a social entity ...” In law, especially the moral rule which requires probity, justice, and honest dealing between man and man....”

. Congregation for the Doctrine of the Faith, Doctrinal Note on some questions regarding The Participation of Catholics in Political Life (2002), 112 available at http:www.vatican.va/ roman_tions/cfaith/documents/ rc_con_cfaith_ doc_20021124_politica_en.html.

. Noonan, The Root and Branch of Roe v. Wade, 63 Neb. L.Rev. 668 (1984), cites the *369 point of view of H. Kelsen, The Pure Theory of Law 95 (M. Knight trans. 2nd ed.1967), in relation to his discussion of abortion decisions, which he regards as stemming from the view that whether or not an entity is a person is a matter of law:
Whoever has the power to define the bearer of constitutional rights has a power that can make nonsense of any particular constitutional right. That this power belongs to the state itself is a point of view associated in jurisprudence with Hans Kel-sen. According to Kelsen a person is simply a construct of the law....
There is one massive phenomenon in the history of our country that might be invoked to support Kelsen's point of view. That phenomenon is the way a very large class of human beings were treated prior to the enactment of the thirteenth and fourteenth amendments. When one looks back at the history of 200 years of slavery in the United States, and looks back at it as a lawyer observing that lawyers had a great deal to do with the classifications that made the phenomenon possible, one realizes that the law, in fact, has been used to create legal rights and legal duties in relation to human behavior that should never have been given a legal form and a legal blessing. To put it bluntly, law was the medium and lawyers were the agents responsible for turning one class of human beings into property....
Gross characterization of human beings in terms that reduced them to animals, or real estate, or even kitchen utensils now
may seem so unbelievable that we all can profess shock and amazement that it was ever done. Eminently respectable lawyers were able to engage in this kind of characterization-among them Thomas Jefferson, who co-authored the slave code of Virginia, and Abraham Lincoln who argued on behalf of a slave owner seeking to recover as his property a woman and her four children who had escaped to the free state of Illinois. Looking at such familiar examples and realizing how commonplace it was for lawyers to engage in this kind of fiction, we learn, I think, that law can operate as a kind of magic. All that is necessary is to permit legal legerdemain to create a mask obliterating the human person being dealt with. Looking at the mask — that is looking at the abstract category created by the law — is not to see the human reality on which the mask is imposed.
Id. at 668-69. (Footnotes omitted.)

. Congregation for the Doctrine of the Faith. Doctrinal Note on some questions regarding The Participation of Catholics in Political Life a^3.

. See also La. R.S. 14:2(7), defining ‘‘person” as including "a human being from the moment of fertilization and implantation and also includes a body of persons, whether incorporated or not.”

. See Gregory A. Kalscheur, S.J., Catholics in Public Life: Judges, Legislators, and Voters, 46 J. Cath. Legal Stud. 211, 224.