634 A.2d 608

**Karen COVELESKI, Administrator Prosequendum of the Estate of Baby Coveleski, Deceased, and in her own Right, as Mother and Natural Guardian of Baby Coveleski, Deceased, Appellants,**

v.

**Vincent A. BUBNIS, Jr.; Zerbe Township; Raymond L. Bowers, Sr., t/d/b/a Corner Tavern; and Consolidated Rail Corporation, Appellees.**

Supreme Court of Pennsylvania.

Argued May 10, 1991.

Submitted Feb. 24, 1993.

Decided Nov. 16, 1993.

John J. Robinson, for appellants.

168

David B. Marateck, for Raymond Bowers, Sr. t/d/b/a Corner Tavern.

Charles H. Saylor, for Zerbe Twp.

David C. Eaton, Geoffrey Shuff, for Consolidated Rail.

Joey Storaska, for Vincent Bubnis.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

MONTEMURO, Justice.

The issue raised in this appeal is whether an action for wrongful death and survival can be maintained on behalf of an eight week old fetus.

On January 3, 1986, Karen Coveleski was a passenger in a Jeep that plunged into a ravine on the property of Consolidated Rail Corporation. At the time of the accident, Ms. Coveleski was approximately eight weeks pregnant. Since the fetus may have been damaged in the crash, or would be damaged by subsequent medical treatment for other injuries caused by the accident, Ms. Coveleski consented to undergo an abortion.

Ms. Coveleski brought actions against Vincent Bubnis Jr., the driver of the Jeep; Zerbe Township, where the accident took place; Conrail, and Raymond Bowers Sr., t/d/b/a The Corner Tavern, which served alcoholic beverages to Bubnis prior to the accident. In addition to the actions brought for her own injuries, she brought wrongful death and survival actions on behalf of the fetus. Bubnis agreed to settle Coveleski's claims; however, the remaining defendants filed preliminary objections in the nature of a demurrer to the wrongful death and survival claims. The trial court sustained the objections, and dismissed the complaint filed on behalf of the estate of the fetus. The Superior Court affirmed. *Coveleski v. Bubnis*, 391 Pa.Super. 409, 571 A.2d 433 (1990). We granted allocatur, and now affirm.

■ An action for wrongful death and survival may be maintained on behalf of an "individual," which is defined to mean a "natural person." 1 Pa.C.S.A. § 1991. The survival act provides that all causes of action shall survive the death of the plaintiff. Thus the issue presented is whether a fetus, which is not born alive,[1] and is incapable of sustaining life outside the womb, is a person for the purposes of the wrongful death and survival acts.

In *Amadio v. Levin*, 509 Pa. 199, 501 A.2d 1085 (1986) we joined the majority of jurisdictions which recognized a cause of action for a fully developed stillborn. In so doing, we rejected our previous line of cases that limited the right to bring a cause of action to those children born alive. We found that it was illogical to permit a cause of action to be maintained on behalf of a child that survived only an instant, while denying the same right to a fully developed fetus which, prior its demise, was capable of an independent existence. However, it is clear from reading both the majority and concurring opinions in *Amadio* that the issue of whether a cause of action exists for a non-viable fetus was not decided.[2] We decline to extend liability under our wrongful death and survival acts any further.

In *Amadio*, we found significant the trend in the law in other jurisdictions recognizing an action for wrongful death for a viable fetus. It would, however, be anomalous to read *Amadio* as precedent for placing Pennsylvania by itself as providing a wrongful death action for an eight week old fetus. Currently, there is no jurisdiction that provides a cause of action for the death of an eight week old fetus that is not born alive, absent express legislative direction. Only Georgia rec-

1. In *Hudak v. Georgy*, 535 Pa. 152, 634 A.2d 600 (1993) we decided today that a cause of action could be maintained on behalf of the estates of triplets that were born alive, but died shortly after birth.

2. As Mr. Justice Zappala wrote in a concurring opinion joined by Mr. Justice McDermott:

Because the Complaint in this case asserts that Jennifer was "viable" at the time the allegedly negligent conduct of the defendants caused her death, the question involved in circumstances implicating "viability" in other ways must be left for another day.

ognizes a cause of action prior to viability. *Porter v. Lassiter,* 91 Ga.App. 712, 87 S.E.2d 100 (1955) (cause of action after fetus has quickened, which usually occurs after the twelfth week of gestation). In fact, every other jurisdiction that has faced this issue has rejected an action for wrongful death for the demise of a fetus prior to viability. *See, e.g., Akl v. Listwa,* 741 F.Supp. 555 (E.D.Pa.1990) (predicting Pennsylvania would not recognize cause of action for the death of an eight-week fetus); *Baby Foy v. Morningstar Beach Resort, Inc.,* 635 F.Supp. 741 (D.V.I.1986) (16–18 week fetus is not a person within the meaning of wrongful death act); *Mace v. Jung,* 210 F.Supp. 706 (D.Alaska 1962) (same); *Gentry v. Gilmore,* 613 So.2d 1241 (Ala.1993) (no cause of action for 13–week fetus); *Green v. Smith,* 71 Ill.2d 501, 17 Ill.Dec. 847, 377 N.E.2d 37 (1978) (no cause of action for 14–18 week old fetus); *Humes v. Clinton,* 246 Kan. 590, 792 P.2d 1032 (1990) (no cause of action for death of 16 and one-half week fetus); *Fryover v. Forbes,* 433 Mich. 878, 446 N.W.2d 292 (1989) (no cause of action for death of 16 week fetus); *Rambo v. Lawson,* 799 S.W.2d 62 (Mo.1990) (no cause of action for death of 12 week fetus); *Wallace v. Wallace,* 120 N.H. 675, 421 A.2d 134 (1980) (same); *Miccolis v. AMICA Mut. Ins. Co.,* 587 A.2d 67 (R.I.1991) (no cause of action for death of five week fetus); *West v. McCoy,* 233 S.C. 369, 105 S.E.2d 88 (1958) (same).

We too reject a cause of action for wrongful death on behalf of a non-viable fetus, and like other jurisdictions, we will defer to our legislature for any substantial expansion of the scope of liability. For example, the Illinois legislature, in response to the court's reluctance to expand liability for the death of a fetus that dies prior to viability, amended its Wrongful Death Act. *See, Lollar v. Tankersley,* —— Ala. ——, 613 So.2d 1249 (1993) citing *Smith v. Mercy Hosp. & Medical Ctr.,* 203 Ill.App.3d 465, 148 Ill.Dec. 567, 560 N.E.2d 1164 (1990) (appeal granted 136 Ill.2d 554, 153 Ill.Dec. 384, 567 N.E.2d 342 (1991). The amended statute now provides in relevant part:

The state of gestation or development of a human being when an injury is caused, when injury takes effect, or at

death, shall not foreclose maintenance of any cause of action under the law of this State arising from the death of a human being caused by the wrongful act, neglect or default. Ill.Rev.Stat.1989, ch. 70, par 2.2 as amended in 1980. Likewise, it should be left to our legislature, not our courts, to create a cause of action on behalf of a fetus that is incapable of an independent existence.

We recognize that wherever we draw any line of demarcation, it is difficult to justify a distinction between two points, infinitesimally close together, yet stationed on opposite sides of that line. For example, in *Amadio*, we rejected the line previously drawn at birth in part, because of the difficulty in distinguishing between the death of an infant that survives only an instant, and a fetus which dies only a moment before birth. Now that a new line has been drawn at viability, the pressure to avoid all possible arbitrary results is again brought to bear. It is difficult to justify a distinction between a fetus that dies a moment prior to viability, and a fetus that dies a moment after viability.

Mr. Justice Larsen has argued that this dilemma is solved by removing all limits on liability. *Amadio v. Levin,* 509 Pa. at 205, 501 A.2d at 1087 citing *Scott v. Kopp,* 494 Pa. 487, 431 A.2d 959 (1981) (Larsen, J. dissenting). However, even though placing any limit on liability is susceptible to the charge of arbitrariness, we will nonetheless resist the urge to extend liability endlessly. Instead, we choose to maintain the line drawn by our precedent, and defer to our legislature for any expansion of liability.[3]

Thus, in order to maintain an action for wrongful death or survival there must be either a child born alive, *See, Hudak v. Georgy,* 535 Pa. 152, 634 A.2d 600 (1993) or a viable fetus

---

**3.** It could be argued that our decision today in *Hudak v. Georgy,* supra, where we permitted liability for triplets that died shortly after live birth, was also an expansion of liability better left for our legislature. However, *Hudak* was nothing more than an affirmation of the proposition that a cause of action for wrongful death exists for a child, or actually children, that die after live birth. A contrary holding in *Hudak* would be a departure from this rule, and would be judicial activism of another sort.

capable of an independent existence at the time of death. *See, Amadio.* In the present case, since the fetus was non-viable, the Superior Court properly affirmed the trial court's dismissal of the Complaint.

Accordingly, we affirm.

LARSEN, J., did not participate in the decision of this case.

NIX, C.J., and FLAHERTY and CAPPY, JJ., file concurring opinions.

FLAHERTY, Justice, concurring.

The issue presented in this appeal is whether actions for money damages pursuant to the wrongful death and survival statutes will lie on behalf of an aborted, non-viable eight-week old fetus. The plurality contends that in order to maintain a wrongful death and/or survival action, an aborted fetus must be capable of independent existence at the time of death. The fetus in this case was not viable, and the plurality, therefore, affirmed the dismissal of the complaint.

I concur with the dismissal of the complaint. My rationale, however is different from the plurality's. As I have written in my dissenting opinion in *Hudak v. Georgy,* 535 Pa. 152, 634 A.2d 600 (1993) also decided today, the fetus is not an "individual" for purposes of money recovery under the survival and wrongful death acts. The injury here, as in *Hudak,* is to the parent, and the parent's cause of action remains undisturbed.

CAPPY, Justice, concurring.

I concur in the result, but disagree with the rationale proposed by the plurality for the reasons set forth in my dissenting opinion in *Hudak v. Georgy,* 535 Pa. 152, 634 A.2d 600, (1993).

NIX, Chief Justice, concurring.

I concur in the decision to affirm the dismissal of the complaint based upon my dissenting opinion in *Amadio v. Levin,* 509 Pa. 199, 230, 501 A.2d 1085, 1101 (1985).