634 A.2d 600

Michael J. HUDAK and Ann H. Hudak, His Wife, Individually and as Co–Administrators of the Estates of Joseph Hudak, Deceased, David Hudak, Deceased and Michael Hudak, Deceased, Appellants,

v.

Farouk M. GEORGY, M.D., and Lyon, Copper, Hippel, Georgy and Collins, P.C., Appellees,

and

Leonard Collins, M.D., Appellee.

Supreme Court of Pennsylvania.

Argued May 10, 1991.

Resubmitted Feb. 24, 1993.

Decided Nov. 16, 1993.

Reargument Denied Dec. 27, 1993.

■■■■■

Roberta D. Pichini, Philadelphia, for appellants.

Joseph Phillips and Dennis J. Bonetti, Harrisburg, for appellees.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION

MONTEMURO, Justice.

The issue raised on this appeal is whether an action for wrongful death and survival can be maintained on behalf of triplets that were born alive, but were unable to sustain life because of their premature birth.

The facts of this case are as follows: Mrs. Hudak became pregnant in November of 1982, and was under the care of Drs. Farouk M. Georgy, Leonard Collins; and Lyon, Cooper, Hipple, Georgy, and Collins, P.C. ("Doctors"). The Doctors specialize in the area of obstetrics and gynecology, and had been treating Mrs. Hudak for infertility. In January of 1983, an ultrasound revealed that Mrs. Hudak was carrying triplets.

On April 10, 1983, when Mrs. Hudak was approximately 24 weeks pregnant, she went into labor. After experiencing difficulty in contacting her physicians, Mrs. Hudak was eventually advised to go to the Williamsport Hospital. Dr. Collins was present at the hospital, and administered Rotodrine in order to stop the contractions. After Mrs. Hudak's contractions ceased, she was transferred to Geisinger Medical Center. The following day the triplets were delivered by caesarian section. All of the triplets were born alive. However, two of the three died in the delivery room twenty minutes after birth, and the third child died approximately ten hours later. The parties stipulated that at the time of delivery, the triplets were

incapable of sustained life outside the womb, and therefore, were not viable.

The Hudaks brought an action under the wrongful death [1] and survival acts [2] on behalf of the triplets. The trial court, upon the Doctors' motion, dismissed the wrongful death and survival claims concluding that an action cannot be maintained on behalf of a non-viable fetus. After the trial court had entered an order certifying the case for immediate appellate review, the court issued an opinion in support of reversing its prior order.

On appeal, the Superior Court determined that our prior precedent was not dispositive on the issue, and affirmed the dismissal. Specifically, the Superior Court held:

In the absence of any expression of intent from the legislature or any analysis by our Supreme Court, we cannot decide that fetuses born prior to attaining viability should now be accorded the same rights that children who have attained viability have been accorded under the Wrongful Death and Survival Acts.

*Hudak v. Georgy*, 390 Pa.Super. 14, 567 A.2d 1095 (1989). We granted allocatur to clarify this important area of the law, and now reverse.

**1.** The Wrongful Death Act, Act of December 20, 1982, P.L. 1409, No. 326, art II, § 201, 42 Pa.C.S.A. § 8301, provides in pertinent part:
(a) General Rule.—An action may be brought under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no action for damages were brought by the injured individual during his lifetime.
(b) Beneficiaries.—Except as provided in subsection (d), the right of action created by this section shall exist only for the benefit of the spouse, children or parents of the deceased, whether or not citizens or residents of this Commonwealth or elsewhere. The damages recovered shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy and without liability to creditors of the deceased person under the statute of this Commonwealth.

**2.** The Survival Statute, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 8302 provides:
All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants.

An action for wrongful death and survival may be maintained on behalf of an "individual", a term which is defined to mean a "natural person". 1 Pa.C.S.A. § 1991. The survival act provides that all causes of action shall survive the death of the plaintiff. Thus, the issue is whether a child that is born alive is a natural person for purposes of our wrongful death and survival acts even if the infant is considered non-viable at the time of its birth. The Hudaks assert that the Superior Court erred by making viability a prerequisite to liability where there was live birth. We agree.

In *Amadio v. Levin*, 509 Pa. 199, 501 A.2d 1085 (1985), this court held that a wrongful death action can be brought on behalf of a fully developed stillborn fetus. In so doing, we overruled our previous line of cases which uniformly held that an independent life in being, one which had survived birth, was a predicate to a wrongful death and survival action. *See Scott v. Kopp*, 494 Pa. 487, 431 A.2d 959 (1981); *Marko v. Philadelphia Transportation Company*, 420 Pa. 124, 216 A.2d 502 (1966); *Carroll v. Skloff*, 415 Pa. 47, 202 A.2d 9 (1964). In *Amadio*, we justified our departure from precedent by demonstrating that the rationale supporting those decisions was no longer valid.

First, the *Amadio* Court noted that a majority of jurisdictions now recognize a cause of action on behalf of the "estates of stillborn children for fatal injuries they received while viable children en ventre sa mere". 509 Pa. at 203, 501 A.2d at 1086–87. Second, we recognized that our wrongful death and survival statutes are remedial in nature and should be liberally construed. Third, we held that difficulties in proving either causation or damages should not operate as a complete bar to recovery. Fourth, we demonstrated that allowing wrongful death actions on behalf of a stillborn fetus would not permit a windfall of double recovery to the parents. Finally, we explained a stillborn's inability to take by distribution is irrelevant when determining how wealth is accumulated.

In *Amadio*, we did not eliminate a cause of action for wrongful death brought on behalf of an infant that only survives a moment. Indeed we stated, "[t]oday's holding

merely makes it clear that the recovery afforded the estate of a stillborn is **no different** than the recovery afforded the estate of a child that dies within seconds of its release from its mother's womb." *Amadio v. Levin,* 509 Pa. 199, 207, 501 A.2d 1085, 1089 (1985) (emphasis added). The Superior Court, by couching the issue in terms of whether infants born alive "should now be accorded the same rights [as] children who have attained viability," has turned our decision in *Amadio* on its head. The issue was not whether the viability standard should supplant live birth as the only relevant measure of when a fetus becomes a person, but whether a viable stillborn fetus should be treated the same as a child born alive. Therefore, *Amadio* did not affect the rule permitting a wrongful death action for a child that is born alive.

Moreover, interjecting the concept of viability into a situation where a child born alive confuses the issue. Viability describes the capacity of the unborn to survive outside the womb, and is not relevant when an infant survives birth.[3] Not surprisingly, no jurisdiction accepts the Doctors' assertion that a child must be viable at the time of birth in order to maintain an action in wrongful death. Indeed, the Doctors' argument that viability rather than live birth is the dispositive consideration in determining the existence of an action for wrongful death has been rejected. *See, Group Health Association, Inc. v. Blumenthal,* 295 Md. 104, 453 A.2d 1198 (1983) (concept of viability is inapplicable in a suit for wrongful death of a 19–20 week-old fetus who survived birth) *citing Torrigian v. Watertown News Co.,* 352 Mass. 446, 225 N.E.2d 926 (1967) (permitting wrongful death action for injuries which caused the premature birth and death of fetus who survived only two and one-half hours); *Wolfe v. Isbell,* 291 Ala. 327, 280 So.2d 758 (1973) (permitting action for wrongful death where child died

---

**3.** The determination of viability becomes critical when there is not a live birth. Today in *Coveleski v. Bubnis,* 535 Pa. 166, 634 A.2d 608 (1993), we determined that a wrongful death cause of action does not lie for the demise of an eight week old fetus. It could be argued that it is inconsistent to treat the "non-viable" triplets differently than a nonviable eight week fetus. However, any apparent inconsistency proceeds from the fallacy that a child born alive can be described in terms of viability.

50 minutes after birth); *see also, Brown v. Green,* 767 F.Supp. 273 (D.D.C.1991) (previable fetus born alive but dying soon after birth may recover for injuries caused by negligent care).[4]

The Doctors' argument that the immaturity of the Hudak triplets operates to bar recovery is also inconsistent with the Second Restatement of Torts. Section 869 provides:

§ 869 Harm to Unborn Child

(1) One who tortiously causes harm to an unborn child is subject to liability to the child for the harm *if the child is born alive.*

(2) If the child is not born alive, there is no liability unless the applicable wrongful death statute so provides.

The Restatement (Second) of Tort § 868 (emphasis added).

The Doctors assert that permitting recovery on behalf of "non-viable" children born alive will lead to limitless liability. Specifically, the Doctors' argue that both physicians and parents would be potentially liable to the estate of an aborted fetus that is born alive. This argument is specious. Liability for wrongful death only attaches to injuries caused by the "wrongful act or neglect or unlawful violence or negligence of another." 42 Pa.C.S.A. § 8301. Certainly, a woman undertaking an act protected by the Constitution, or a physician performing a lawful act, would not come within the scope of liability.

This case does not attempt to address the issue of whether there is a point in time, prior to birth, when a fetus becomes a

---

**4.** Contrary to Mr. Justice Cappy's insistence, we are neither advocating an abandonment of *Amadio,* which unequivocally permits a cause of action for the death of a fully developed fetus, nor are we, as is further suggested, attempting to expand *Amadio* beyond its own facts. Rather, it is the dissent which advocates the application of *Amadio* to the present case, where the death of a fully developed fetus is not involved. Further, we do not agree with Justice Cappy's attempt to dismiss the existence of the triplets, however brief, by characterizing them as having merely shown "signs of live birth." (Dissent at 6). We disagree with the implication of this description that some level of endurance must be achieved before a living being can qualify as an individual under the Act. No jurisdiction has qualified life in this manner, and denied a cause of action for children that are born alive. Pennsylvania should not be the first.

person for purposes of our wrongful death and survival acts. *See, Coveleski v. Bubnis,* 535 Pa. 166, 634 A.2d 608 (1993). Rather, today we are reaffirming the unremarkable proposition that an infant born alive is, without qualification, a person. Since live birth has always been and should remain a clear line of demarcation, an action for wrongful death and survival can be maintained on behalf of the Hudak triplets.

Accordingly, we reverse.

LARSEN, J., did not participate in the decision of this case.

NIX, C.J., files a concurring opinion.

FLAHERTY and CAPPY, JJ., file dissenting opinions.

NIX, Chief Justice, concurring.

I join in the opinion authored by Mr. Justice Montemuro. I write separately, however, to reconcile my views in the dissenting opinion in *Amadio v. Levin,* 509 Pa. 199, 230, 501 A.2d 1085, 1101 (1985), with the instant facts.

In *Amadio,* I wrote that the mother's personal injury action would adequately compensate for any injuries sustained by the stillborn fetus. In the instant case, however, these children lived outside of the womb for at least twenty minutes, and one child survived for ten hours. In that time, these children suffered and ultimately died completely independent of the mother. As a result, any action on behalf of the mother to compensate her for her injuries would not encompass the damages that these children suffered after their birth. Therefore, only a wrongful death and survival action maintained on behalf of these children will adequately compensate them for their injuries. Accordingly, I join.

FLAHERTY, Justice, dissenting.

The issue raised on this appeal is whether an action for money damages based on the wrongful death and survival acts may be brought on behalf of a non-viable infant, unable to survive because it was born prematurely. The majority holds that such an action may be brought because "a cause of action exists for a child, or actually children, that die after live birth.

A contrary holding in *Hudak* would be a departure from this rule." *Coveleski v. Bubnis*, 535 Pa. 166, 171, 634 A.2d 608, 610 (1993), n. 3. I dissent from this view.

The parties stipulate that at the time of delivery, the triplets were non-viable, i.e., they were, because of immaturity, incapable of living outside the womb.

Superior Court in the present case was correct in its view that heretofore there existed no cause of action under the wrongful death or survival acts in favor of a non-viable fetus. The legislature defines the "individual" who may bring an action in the wrongful death or survival context merely as a "natural person," and absent legislative direction that a non-viable fetus is "an individual," ordinary language usage suggests that it is not. Further, *Amadio v. Levin*, 509 Pa. 199, 501 A.2d 1085 (1985) simply has no application to this case since it involved a stillborn, but perfectly formed child, who would have been viable had it been born alive.[1]

Appellants, nonetheless, insist that the Hudak triplets were live-born individuals with full rights under Pennsylvania law, and, thus, that their representatives are entitled to bring survival and wrongful death actions on their behalf. The claim, in essence, is that a prematurely born, non-viable fetus, incapable of independent existence outside the womb of the mother, is an "individual" within the meaning of the wrongful death and survival statutes.

The analysis in *Amadio*, where this writer dissented to the majority's view that a stillborn child may recover under the wrongful death and survival acts, is similar to that required in this case. My argument in *Amadio*, however, has been criticized because it is "circular":

> The second major objection to permitting wrongful death and survival actions on behalf of a stillborn child is the "derivative" nature of such actions. According to this reasoning, neither Act "was intended to provide a recovery in

1. Additionally, *Amadio* was a 4–3 decision, and since Mr. Justice Zappala has stated in his concurring opinion in *Amadio* that *Amadio* does not dispose of the question of "viability" in future cases, it is incontrovertible that *Amadio* cannot control the present case.

cases where the person on whose behalf the suits were brought was never alive," and "[f]or purposes of monetary recovery, a stillborn child was never alive." Dissenting Opinion of Flaherty, J. at 2. *See also Scott v. Kopp,* 494 Pa. at 490, 431 A.2d at 961; *Carroll v. Skloff,* 415 Pa. at 48, 202 A.2d at 10–11. This reasoning succumbs to the fallacy of *petitio principii,* commonly identified as circular reasoning or begging the question. Thus a fetus is not considered to have certain legal rights because it has not been born. No reason in logic is given why these rights *could* not be ascribed to a child before birth, only that they *are* not. When the question presented is whether or not legal rights should be ascribed, that question cannot be answered simply by stating that the law does not do so.

509 Pa. at 214, 501 A.2d at 1092, (concurring opinion, Mr. Justice Zappala). I cite this analysis of Mr. Justice Zappala because I think it is helpful in providing the direction that our deliberation should take. When fundamental perceptions are questioned, e.g., that a fetus is or is not an "individual," the justification given in support of the fundamental perceptions will ultimately rest on belief and policy. My reason for asserting that a fetus is not an "individual" for purposes of recovery under the wrongful death and survival acts is the belief that it is absurd to regard a non-viable fetus in the same way that we would regard a living person, and the policy that, as Prosser puts it, some boundary must be set to the consequences of any act:

"Proximate cause"—in itself an unfortunate term—is merely the limitation which the courts have placed upon the actor's responsibility for the consequences of his conduct. In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the discovery of America and beyond. "The fatal trespass done by Eve was cause of all our woe." But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would "set society on edge and fill the courts with endless litigation." As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result

and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy.

Prosser, *The Law of Torts,* § 41, p. 236–37 (4th Ed.1971). To say that some boundary must be set upon liability for the consequences of any act, which is sometimes expressed as a problem in proximate causation, is analogous to saying that the recovery for any given wrong must be subject to some reasonable limitation.

Those who wish to argue that non-viable fetuses should be entitled to bring the actions for money damages sought here would, of necessity, expand the recovery potentially available to plaintiffs in cases such as this, and would insist, presumably, that even though it is the parents who will receive whatever money is awarded, the injury was to the non-viable fetuses as well as to the parents. I, on the other hand, believe that the compensable injury, if such is proved, is to the parents, and that when the parents are compensated, they have been made whole, to the extent that is ever possible in the law. The non-viable fetuses themselves, although they may well be persons in the metaphysical or religious sense, were never lives in being in the sense of persons born and able to continue living, i.e., beings who normally bring lawsuits.

The triplets, therefore, should have no cause of action under the wrongful death and survival statutes, and Superior Court was correct in dismissing these actions. The persons who were injured in this case, the parents, have legal remedy on their own behalf.

CAPPY, Justice, dissenting.

The majority finds that an action for wrongful death[1] and survival[2] can be maintained on behalf of triplets that were "born alive" but were unable to sustain life because of their premature birth. In reaching this conclusion the majority asserts that the lower courts which refused to allow this cause

1. 42 Pa.C.S. § 8301(a).
2. 42 Pa.C.S. § 8302.

of action have taken the decision in *Amadio v. Levin*, 509 Pa. 199, 501 A.2d 1085 (1985) and "turned it on its head." (Majority opinion at p. 602). To the contrary, I assert that it is the majority here which now turns *Amadio* on its head. Further, I reject the majority's assertion that "interjecting the concept of viability into a situation where a child [is] born alive confuses the issue." (Majority opinion at p. 602). As I find viability to be *the issue* I am compelled to dissent.

The facts in this case reveal that Mrs. Hudak was under the care of the defendant physicians for infertility. In January of 1983 she was found to be carrying triplets. On April 10, 1983, at which point the fetuses were between 20 to 23 weeks gestational age, Mrs. Hudak went into premature labor. The following day the triplets were delivered by cesarean section. Within 20 minutes, attempts at resuscitation being unsuccessful, two of the triplets were pronounced dead in the delivery room. The third triplet was resuscitated and placed on a respirator. Life support was removed ten hours later and the third triplet was pronounced dead. The parties stipulated that at the time of delivery the triplets were incapable of sustained life outside the womb thus, they were not viable.[3]

The question now before this Court is whether a cause of action for wrongful death and survival can be brought against the defendant physicians on behalf of the non-viable triplets. The majority concludes that as the triplets were "live born" the question of viability is immaterial and thus would allow the present action to proceed. Considering the impact of this Court's recent decision in *Amadio* regarding the question of viability in relation to the wrongful death and survival actions in Pennsylvania, I cannot accept the conclusion of the majority.

*Amadio* specifically overruled *Scott v. Kopp*, 494 Pa. 487, 431 A.2d 959 (1981); *Marko v. Philadelphia Transportation*

---

**3.** Although it is clinically possible for a non-viable infant to show signs of life recognized by a layman, *i.e.*, heartbeat, breathing, brain-wave activity, it is medically accepted that a non-viable infant lacks sufficient lung tissue to permit survival. Botkin, *Delivery Room Decisions for Tiny Infants: An Ethical Analysis*, 306 J. Clinical Ethics 307 (Winter 1990).

*Company,* 420 Pa. 124, 216 A.2d 502 (1966); and *Carroll v. Skloff,* 415 Pa. 47, 202 A.2d 9 (1964). *Scott, Marko,* and *Carroll* held that a cause of action under the wrongful death and survival statutes could only be brought on behalf of a fully formed infant born alive. *Amadio* expanded the parameters of the wrongful death and survival actions by recognizing a cause of action thereunder on behalf of a stillborn viable infant. The impact of *Amadio* was to alter the line of demarcation in such actions by expanding the right to bring an action on behalf of those infants who were "viable"—capable of sustaining life outside the womb—so as to effectuate the remedial purpose of the cause of action.

> By abandoning the former arbitrary "live birth" require-ment, we feel a liberal construction of the wrongful death and survival statutes will be accomplished. No longer will we sanction a legal doctrine that enables a tortfeasor who causes death to escape full liability, while rendering one whose wrongdoing is less severe in its consequences an-swerable in a wrongful death or other negligence action merely because his victim survives birth.

*Amadio,* 509 Pa. at 205, 501 A.2d at 1088 (citation omitted).

The decision in *Amadio* began a new era under the wrong-ful death and survival acts in Pennsylvania. The rationale for departing from our previous line of cases was set forth in the majority opinion:

> Upon thorough review of our prior holdings, the change in the attitude of our sister states permitting these actions, and Appellants' arguments that medical knowledge has ad-vanced since we first formulated our position against the maintenance of these actions, we conclude that the time has arrived for us to join our twenty-eight sister states and the District of Columbia and recognize that survival and wrong-ful death actions lie by the estates of stillborn children for fatal injuries they received while **viable** children en ventre sa mere.

*Amadio,* 509 Pa. at 203, 501 A.2d at 1086–87 (footnote omitted; emphasis added).

In reaching this conclusion, the previous objections to expanding the right to bring a wrongful death and survival action—i.e: double damages to the parents; failure of the statute to speak to a fetus as an "individual"; problems with proof of causation and damages; authority in other jurisdictions; and the inability of a fetus to inherit property—were overcome by the majority in *Amadio*.

In surmounting these obstacles, the majority in *Amadio* relied upon the great weight of authority in other jurisdictions and the advances in medical knowledge. I note that little has changed either in our sister states or within the medical field since *Amadio* that would justify the sudden abandonment of viability as a prerequisite to bringing a survival action.

At the time *Amadio* was written, twenty-eight jurisdictions recognized a cause of action for a viable fetus. Since *Amadio*, the number has risen to thirty-four jurisdictions, excluding Pennsylvania.[4] We recognize that in those jurisdictions, as viability was the key factor, the question of live birth was not an issue. Very few cases have been considered where a non-viable fetus is born alive. The majority does correctly note that a cause of action has been recognized in those jurisdic-

4. The jurisdictions which recognize a cause of action for a **viable** fetus are: *Simmons v. Howard University*, 323 F.Supp. 529 (D.D.C., 1971); *Eich v. Town of Gulf Shores*, 293 Ala. 95, 300 So.2d 354 (1974); *Summerfield v. Superior Court*, 144 Ariz. 467, 698 P.2d 712 (1985); *Hatala v. Markiewicz*, 26 Conn.Supp. 358, 224 A.2d 406 (1966); *Worgan v. Greggo & Ferrara, Inc.*, 50 Del. 258, 128 A.2d 557 (1956); *Volk v. Baldazo*, 103 Idaho 570, 651 P.2d 11 (1982); *Chrisafogeorgis v. Brandenberg*, 55 Ill.2d 368, 304 N.E.2d 88 (1973); *Britt v. Sears*, 150 Ind.App. 487, 277 N.E.2d 20 (1971); *Dunn v. Rose Way, Inc.*, 333 N.W.2d 830 (Iowa 1983); *Hale v. Manion*, 189 Kan. 143, 368 P.2d 1 (1962); *Mitchell v. Couch*, 285 S.W.2d 901 (Ky.1955); *Danos v. St. Pierre*, 402 So.2d 633 (La.1981); *Mone v. Greyhound Lines, Inc.*, 368 Mass. 354, 331 N.E.2d 916 (1975); *O'Neill v. Morse*, 385 Mich. 130, 188 N.W.2d 785 (1971); *Pehrson v. Kistner*, 301 Minn. 299, 222 N.W.2d 334 (1974); *Terrell v. Rankin*, 511 So.2d 126 (Miss.1987); *O'Grady v. Brown*, 654 S.W.2d 904 (Mo.1983); *White v. Yup*, 85 Nev. 527, 458 P.2d 617 (1969); *Wallace v. Wallace*, 120 N.H. 675, 421 A.2d 134 (1980); *Salazar v. St. Vincent Hospital*, 95 N.M. 150, 619 P.2d 826 (App.) *writ quashed by* 94 N.M. 806, 617 P.2d 1321 (1980); *DiDonato v. Wortman*, 320 N.C. 423, 358 S.E.2d 489 (1987); *Hopkins v. McBane*, 427 N.W.2d 85 (N.D.1988); *Stidam v. Ashmore*, 109 Ohio App. 431, 167 N.E.2d 106 (1959); *Evans v. Olson*, 550 P.2d 924 (Okla.1976); *Libbee v. Permanente*

tions which have been faced with the unusual situation, as presented herein, where the non-viable fetus is born alive.[5] The majority advocates that we permit a cause of action whenever there are signs of a live birth, regardless of viability. I find no justification for extending the wrongful death cause of action to a non-viable fetus.

The other factor cited by the majority in *Amadio* in reaching its conclusion was the advancement in medical knowledge. The *Amadio* Court was concerned with the ability of medical technology to sustain the viable fetus outside the womb. This factor is the one most often cited by the jurisdictions which permit a cause of action for wrongful death of a viable fetus.[6] The fallacy in attempting to expand this reasoning beyond the considerations in *Amadio*, however, is that little has actually changed in the medical determination of the demarcation of viability since the trimester approach created in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

The United States Supreme Court in *Roe* stated "the fetus becomes 'viable,' that is, potentially able to live outside the mother's womb, albeit with artificial aid . . . at about seven months (28 weeks) but [viability] may occur earlier, even at 24 weeks." *Id.* at 160, 93 S.Ct. at 730 (footnote omitted). Present medical technology recommends that it is futile to expect

*Clinic*, 268 Or. 258, 518 P.2d 636 (1974); *Miccolis v. AMICA Mutual Insurance Co., et al.*, 587 A.2d 67 (R.I.1991); *Fowler v. Woodward*, 244 S.C. 608, 138 S.E.2d 42 (1964); *Matter of Certification of a Question of Law From U.S. Dist. Court, Dist. of South Dakota, Southern Division*, 387 N.W.2d 42 (S.D.1986); *Nelson v. Peterson*, 542 P.2d 1075 (Utah 1975); *Vaillancourt v. Medical Center Hospital of Vermont, Inc.*, 139 Vt. 138, 425 A.2d 92 (1980); *Moen v. Hanson*, 85 Wash.2d 597, 537 P.2d 266 (1975); *Baldwin v. Butcher*, 155 W.Va. 431, 184 S.E.2d 428 (1971); *Kwaterski v. State Farm Mut. Auto Ins. Co.*, 34 Wis.2d 14, 148 N.W.2d 107 (1967).

5. Finding that the question of viability creates additional difficulties in determining causation, two jurisdictions steadfastly refuse to discuss the issue where the non-viable fetus is born alive. *See Group Health Assoc., Inc. v. Blumenthal*, 295 Md. 104, 453 A.2d 1198 (1983); *Endresz v. Friedberg*, 24 N.Y.2d 478, 301 N.Y.S.2d 65, 248 N.E.2d 901 (1969).

6. The jurisdictions which recognize a cause of action at the point that a fetus is viable rely heavily upon the well reasoned dissent of Justice Boggs, in *Allaire v. St. Luke's Hospital*, 184 Ill. 359, 366–69, 56 N.E. 638, 640 (1900). *See also* cases cited *supra*, note 4.

the survival of a fetus of less than 23 weeks gestational age. Botkin, *Delivery Room Decisions for Tiny Infants: An Ethical Analysis,* 306 Clinical Ethics (Winter 1990); Avery, *Considerations on the Definition of Viability,* 206 New England J.Med. (Jan. 23, 1975).

There have been no significant advances in medical technology that would justify abandoning viability as the point at which a fetus can expect to exist separate from its mother or to logically support granting a cause of action to a non-viable fetus. Thus, the rationale offered in *Amadio* for recognizing a wrongful death cause of action on behalf of a viable fetus does not support the position advocated by the majority in the instant case.

Although it is a most difficult decision, I must dispute the rationale of the majority, and insist that if a fetus is to be granted a cause of action under the Pennsylvania wrongful death act, such cause of action can be extended only to a viable fetus. For the reasons set forth herein, I must respectfully, yet emphatically, dissent.