1996 SD 16

**In the Matter of the Certification of a Question of Law from the United States District Court, District of South Dakota, Southern Division, Pursuant to the Provisions of SDCL 15–24A–1, and concerning federal action**

**Beth A. WIERSMA and John M. Wiersma, Plaintiffs,**

v.

**MAPLE LEAF FARMS, a foreign business, Defendant.**

**No. 19017.**

Supreme Court of South Dakota.

Argued March 20, 1995.

Reassigned Sept. 22, 1995.

Decided Feb. 14, 1996.

---

Rodney Freeman, Jr., and Gerald L. Kaufman, Jr., of Churchill, Manolis, Freeman, Kludt, Kaufman & Shelton, Huron, for plaintiffs.

Thomas M. Frankman of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant.

KONENKAMP, Justice (on reassignment).

[¶ 1] In answer to a certified question from the United States District Court, we conclude a cause of action exists in South Dakota for the wrongful death of a nonviable unborn child.

## FACTS

[¶ 2] Beth Wiersma contracted salmonella poisoning after eating a portion of Maple Leaf Farms' chicken cordon bleu. When she was hospitalized on October 8, 1990, she was 7.3 weeks pregnant. Her baby died *in utero:* an ultrasound test on October 21 revealed no fetal heart sounds. All agree, the child was not viable, thus incapable of living outside the uterus. Beth and her husband, John, brought an action in circuit court on multiple claims, including wrongful death, against Maple Leaf for the loss of their unborn child. Maple Leaf removed the suit to the United States District Court and then filed a motion for summary judgment. United States District Court Judge John B. Jones certified the following legal question for our review:

> Does SDCL 21–5–1 provide for a cause of action for wrongful death of an unborn child where a miscarriage at 7.3 weeks of pregnancy is alleged to have been caused by a wrongful act or omission?

## DISCUSSION

[¶ 3] **I. Statutory Analysis**

[¶ 4] The construction of a statute is a question of law. *Stover v. Critchfield,*

510 N.W.2d 681, 683 (S.D.1994). We interpret statutes in accord with legislative intent. *Whalen v. Whalen,* 490 N.W.2d 276, 280 (S.D.1992). Such intent is derived from the plain, ordinary and popular meaning of statutory language. *Id.* "[I]ntent must be determined from the statute as a whole, as well as enactments relating to the same subject." *Id.* (citing *Border States Paving v. Dept. of Revenue,* 437 N.W.2d 872, 874 (S.D.1989); *Appeal of AT & T Info. Systems,* 405 N.W.2d 24, 27 (S.D.1987); *Meyerink v. Northwestern Public Service Co.,* 391 N.W.2d 180, 183 (S.D. 1986); *Simpson v. Tobin,* 367 N.W.2d 757, 763 (S.D.1985)). "[W]here statutes appear to conflict, it is our responsibility to give reasonable construction to both, and if possible, to give effect to all provisions under consideration, construing them together to make them 'harmonious and workable.'" *Whalen,* 490 N.W.2d at 280.

[¶ 5] With these rules to guide us, we address the certified question. SDCL 21–5–1 provides:

> Whenever the death or injury of a person, *including an unborn child,* shall be caused by a wrongful act, neglect, or default, and the act, neglect, or default is such as would have entitled the party injured to *maintain an action and recover damages in respect thereto, if death had not ensued,* then and in every such case, the corporation which, or the person who, would have been liable, if death had not ensued, or the administrator or executor of the estate of such person as such administrator or executor, shall be liable, to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such *circumstances as amount in law to a* felony; and when the action is against such administrator or executor, the damages recovered shall be a valid claim against the estate of such deceased person. *However, an action under this section involving an unborn child shall be for the exclusive benefit of the mother or the lawfully married parents of the unborn child.* (Emphasis added.)

We presume the Legislature never intends to use surplusage in its enactments, so where possible the law must be construed to give effect to all its provisions. *US West Commu-*

*nications v. Public Utilities Comm'n.*, 505 N.W.2d 115, 123 (S.D.1993) (citing *Nelson v. School Bd. of Hill City S.D.*, 459 N.W.2d 451 (S.D.1990)). The phrase "including an unborn child," added by amendment in 1984, modifies the word "person," thus broadening the class of persons on whose loss a wrongful death claim may be asserted. Interpreting the pre–1984 version of this statute, we held the term "person" included a viable unborn fetus. *In re Certification of Question of Law from U.S. Dist. Court (Farley)*, 387 N.W.2d 42 (S.D.1986).[1] To now interpret "unborn child" to mean only a viable fetus would result in the amendment adding nothing to the term "person," and would negate the legislative purpose of expanding the class of persons covered by the statute.

[¶ 6] When a statute's language is clear, certain and unambiguous, our function confines us to declare its meaning as plainly expressed. *US West Communications*, 505 N.W.2d at 123 (citing *Appeal of AT & T Information Systems*, 405 N.W.2d 24 (S.D. 1987)). "Unborn" as defined in its ordinary and popular sense means, not born or brought into being; still within the mother's womb; not yet delivered; or yet to come or be, future. Webster's New World Dictionary 1544 (2dCollegeEd 1980). Our Legislature chose not to use embryo or fetus or some other medico-legal designation in its 1984 revision to the statute, but instead chose simply "unborn child."[2] Clearly, its intent in using this term was to include any child still within a mother's womb; no distinction was made between viable and nonviable. Furthermore, the Legislature has subsequently defined "unborn child" in our criminal stat-

utes as "an individual organism of the species homo sapiens from fertilization until live birth."[3] SDCL 22–1–2(50A). This later definition, while not controlling, reinforces our interpretation of what the Legislature intended.

[¶ 7] We acknowledge a majority of jurisdictions decline to recognize wrongful death actions for children *in utero* before viability. *Gentry v. Gilmore*, 613 So.2d 1241 (Ala.1993) (no cause of action for a 13–week–old fetus); *Ferguson v. District of Columbia*, 629 A.2d 15 (D.C.App.1993) (non-viable fetus); *Humes v. Clinton*, 246 Kan. 590, 792 P.2d 1032 (1990) (12–week–old fetus); *Fryover v. Forbes*, 433 Mich. 878, 446 N.W.2d 292 (1989) (12–week–old fetus); *Wallace v. Wallace*, 120 N.H. 675, 421 A.2d 134 (1980) (12–week–old fetus); *Guyer v. Hugo Publishing Co.*, 830 P.2d 1393 (Okla.Ct.App.1991) (14–week–old fetus); *Coveleski v. Bubnis*, 535 Pa. 166, 634 A.2d 608 (1993) (8–week–old fetus); *Miccolis v. AMICA Mut. Ins. Co.*, 587 A.2d 67 (R.I.1991) (5–week–old fetus); *West v. McCoy*, 233 S.C. 369, 105 S.E.2d 88 (1958) (5–week–old fetus). Yet none of these authorities interpret a term similar to "unborn child," but instead consider whether a nonviable child *in utero* falls within the definition of "person," "minor child," "natural person," or "one." *See generally*, Sheldon R. Shapiro, Annotation, *Right to Maintain Action or to Recover Damages for Death of Unborn Child*, 84 ALR3d 411 (1978).

[¶ 8] Other jurisdictions have recognized a cause of action for the wrongful death of a nonviable fetus. *See Porter v. Lassiter*, 91 Ga.App. 712, 87 S.E.2d 100 (1955)(cause of

---

1. This Court stated in *Farley* that the 1984 amendment did not change or alter the basic substance of SDCL 21–5–1, but merely provided clarification on how the statute is to operate. *Farley*, 387 N.W.2d at 44. However, the question in *Farley* was whether, prior to the 1984 amendment, the statute provided a valid cause of action for the death of a viable unborn child. *Id.* at 43. Hence, any reference in *Farley* to the 1984 amendment was mere dicta and not binding as legal precedent in this case.

2. The Legislature was surely aware of *Roe v. Wade* and its progeny, but chose this terminology perhaps to avoid the viability distinction. *See* SDCL Ch. 34–23A (regulating performance of abortions). Nothing in *Roe* prohibits the Legisla-

ture from including a nonviable fetus in its definition of a person under our State's wrongful death act. Other states have done it as well, as discussed below. Clearly, neither physicians nor mothers can be held liable for wrongful death when an abortion is performed with the mother's consent. *See* SDCL Ch. 34–23A.

3. The 1995 Legislature adopted this definition to be used in fetal assault and homicide statutes. SDCL 22–16–1.1; 22–16–15, –20; 22–18–1.2, –1.3. These laws do not declare illegal, acts which cause the death of an unborn child if those acts were committed during any abortion, lawful or unlawful, to which the pregnant woman consented.

action exists after the fetus has "quickened," or movement occurs within the womb); *Smith v. Mercy Hosp. and Medical Center*, 203 Ill.App.3d 465, 148 Ill.Dec. 567, 560 N.E.2d 1164 (1990)(viability of fetus not necessary to maintain wrongful death action); *Connor v. Monkem Co., Inc.*, 898 S.W.2d 89 (Mo.1995)(parent has valid claim for wrongful death of "unborn child" before viability).[4]

> While § 1.205(2) does not mandate any particular result, as would an express amendment of § 537.080, [wrongful death statute] we cannot avoid the conclusion that the legislature intended the courts to interpret "person" within the wrongful death statute to allow a natural parent to state a claim for the wrongful death of his or her unborn child, even prior to viability.

*Connor*, 898 S.W.2d at 92 (footnote omitted). These courts interpreted their own unique statutes, and although these decisions may be instructive, they are not necessarily authoritative in our analysis. Based on our reading of SDCL 21–5–1, we conclude the Legislature clearly intended to encompass nonviable children in the term "unborn child." To hold otherwise would contravene the statute's plain meaning and intent.

### [¶ 9] II. Abortion Rights Analysis

[¶ 10] Maple Leaf contends, "[i]t would be inconsistent to provide a cause of action for wrongful death of a nonviable fetus and at the same time under South Dakota law allow for an abortion to take place up to the 24th week of pregnancy...." *See* SDCL Ch. 34–23A (regulating abortions). This argument has gained favor in Michigan:

> If the mother can intentionally terminate the pregnancy at three months, without regard to the rights of the fetus, it becomes increasingly difficult to justify holding a third person liable *to the fetus* for unknowingly and unintentionally, but neg-

ligently, causing the pregnancy to end at the same stage. There would be an inherent conflict in giving the mother the right to terminate the pregnancy yet holding that an action may be brought on behalf of the same fetus under the wrongful death act. (Emphasis added)(footnote omitted).

*See Toth v. Goree*, 65 Mich.App. 296, 237 N.W.2d 297, 301 (1975) and its progeny. Two matters distinguish this rationale. First, unlike Michigan's law, South Dakota's wrongful death statute grants a cause of action for the death of an unborn child to the mother or the lawfully married parents, not to the unborn child. Second, and more fundamentally, the use of abortion rights analysis, simply has no applicability here. A choice to abort sanctions a mother's decision, not someone else's. *See Planned Parenthood v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). If we accept Maple Leaf's argument, someone could fatally injure an unborn child by a nonconsensual, wrongful act and still avoid civil liability because the child was not yet viable. This would, ironically, give the tortfeasor the same civil rights as the mother to terminate a pregnancy. An Illinois Court rejected a similar argument, stating

> Clearly, a pregnant woman who chooses to terminate her pregnancy and the defendant who assaults a pregnant woman, causing the death of her fetus, are not similarly situated. A woman consents to the abortion and has the absolute right, at least during the first trimester of the pregnancy, to choose to terminate the pregnancy. A woman has a privacy interest in terminating her pregnancy; however, defendant has no such interest.

*People v. Ford*, 221 Ill.App.3d 354, 163 Ill. Dec. 766, 581 N.E.2d 1189, 1199 (1991).

> The state of gestation or development of a human being when an injury is caused, when an injury takes effect, or at death, shall not foreclose maintenance of any cause of action under the law of this State arising from the death of a human being caused by wrongful act, neglect or default.
>
> Ill.Ann.Stat.Ch. 740, par. 180/2.2 (Smith–Hurd 1992)(original version at Ill.Rev.Stat.Ch. 70, par. 2.2 (1991)).

---

4. The Missouri Legislature enacted general provisions holding that the life of each human being begins at conception; unborn children have protectable interests in life, health, and well-being; and the natural parents of unborn children have protectable interests in the life, health, and well-being of their unborn child. *See generally* Mo. Rev.Stat. § 1.205 (1994). Illinois has also statutorily authorized a wrongful death claim for a nonviable fetus:

[¶ 11] Moreover, the concept of viability is outmoded in tort law. "Viability" as a developmental turning point was embraced in abortion cases to balance the privacy rights of a mother as against her unborn child.[5] For any other purpose, viability is purely an arbitrary milestone from which to reckon a child's legal existence.

> Viability of course does not affect the question of the legal existence of the unborn, and therefore of the defendant's duty, and it is a most unsatisfactory criterion, since it is a relative matter, depending on the health of the mother and child and many other matters in addition to the stage of development.

W.PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 55 at 369 (5thEd 1984)(footnote omitted).

South Dakota's wrongful death statute preserves the interests of parents in their unborn child and authorizes a remedy when a third party wrongfully ends their child's life before birth. Parents may seek redress regardless of whether their unborn child was viable. We answer the District Court's Certified Question, "yes."

[¶ 13] MILLER, C.J., and SABERS, J., concur.

[¶ 14] AMUNDSON, J., dissents.

[¶ 15] GILBERTSON, J., not having been a member of the Court at the time this case was considered, did not participate.

AMUNDSON, Justice (dissenting).

[¶ 16] I would hold that SDCL 21–5–1 does not authorize a claim for the wrongful death of a nonviable fetus. The language of SDCL 21–5–1 provides:

> Whenever the death or injury of a *person, including an unborn child,* shall be caused by a wrongful act, neglect, or default, and the act, neglect, or default is such as would have entitled the party injured to maintain an action and recover damages in respect thereto, if death had not ensued, then and in every such case, the corporation which, or the person who, would have been liable, if death had not ensued, or the administrator or executor of the estate of such person as such administrator or executor, shall be liable, to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony; and when the action is against such administrator or executor, the damages recovered shall be a valid claim against the estate of such deceased person. However, an action under this section involving an unborn child shall be for the exclusive benefit of the mother or the lawfully married parents of the unborn child. (Emphasis added.)

[¶ 17] It is important to note the phrase "including an unborn child" modifies the word "person." The grammatical position of this clause in the sentence broadens the term "person," expanding the class of "persons" eligible to assert a wrongful death claim. However, the words "unborn child" are not defined anywhere within SDCL ch. 21–5.[1]

[¶ 18] Noting the tumultuous controversy over the definition of "unborn child," the

---

5. The right to abort protects a mother's "liberty interest" and "fundamental right to privacy" in voluntarily choosing to end her pregnancy in the first trimester, as reflected in the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the U.S. Constitution. *See Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

1. Subsequent to the filing of this case, the 1995 legislature adopted a definition of "unborn child," SDCL 22–1–2(50A), to be used in conjunction with fetal assault and homicide statutes. SDCL 22–16–1.1; –15 and –20; 22–18–1.2, and –1.3. That definition provides: " 'Unborn child,' an individual organism of the species homo sapiens from fertilization until live birth."
Still, this definition cannot be applied retroactively as an indication of legislative intent under

South Dakota's wrongful death statute at issue. First, the newly enacted assault statutes, SDCL 22–18–1.2 and –1.3, specifically require the "unborn child" to be "born alive" as an element of the offense. A fetus is viable if it is able to be "born alive." Unless this condition exists, the statute presumably is inapplicable. The language of those two provisions is as follows:
SDCL 22–18–1.2 provides: "Any person who assaults a pregnant woman and inflicts bodily injury on an unborn child *who is subsequently born alive* is guilty of simple assault. Bodily injury does not include the inducement of the unborn child's birth when done for bona fide medical purposes." (Emphasis added.)
SDCL 22–18–1.3 provides: "Any person who assaults a pregnant woman and inflicts great

absence of a definition renders the clause ambiguous. Accordingly, a court should consider at what point of gestation an unborn child becomes a "person," relying on related chapters of South Dakota Codified Laws, South Dakota case law, and precedent from other jurisdictions. *See Sander v. Geib, Elston, Frost Professional. Ass'n,* 506 N.W.2d 107, 125 (S.D.1993) (interpreting statutory language by reviewing other enactments relating to the same subject); *John Morrell & Co. v. Dept. of Labor,* 460 N.W.2d 141, 143 (S.D.1990) (court may look to other jurisdictions for guidance on cases of first impression).

[¶ 19] Neither chapters of the South Dakota Codified Laws on vital records (SDCL ch. 34–25), nor abortion (SDCL ch. 34–23A), define "unborn child." Instead, they specifically set forth mandates to explain the meaning of the term within the statutory scheme. Many legislatures defined and used terms such as "fetus"[2] or "gestational age of the

unborn child" in their wrongful death provisions to alleviate the conflict we now face. Nevertheless, the question of what constitutes an "unborn child" within the larger classification of "person" is not defined under this statute.

[¶ 20] The Illinois Legislature overcame this definitional burden by providing a meaning for the class of unborn persons covered by that jurisdiction's wrongful death statute. Illinois is the only jurisdiction which statutorily recognizes a wrongful death action for a nonviable fetus. The language of the Illinois statute states:

> The state of gestation or development of a human being when an injury is caused, when injury takes effect, or at death, shall not foreclose maintenance of any cause of action under the law of this State arising from the death of a human being caused by wrongful act, neglect or default.

Ill.Rev.Stat. 1989, ch. 70, par. 2.2.

[¶ 21] The Illinois Court of Appeals in *Smith v. Mercy Hosp. and Medical Center,*

---

serious bodily injury on an unborn child *who is subsequently born alive* is guilty of aggravated assault." (Emphasis added.)

Next, the 1995 fetal homicide statutes, SDCL 22–16–1.1, –15 and –20, involve some level of criminal intent or recklessness, which is markedly absent from the negligence-based wrongful death provision. The language of these statutes is as follows:

SDCL 22–16–1.1 provides: "Homicide is fetal homicide if a person knew, or reasonably should have known, that a woman bearing an unborn child was pregnant and caused the death of the unborn child without lawful justification and if the person:

(1) Intended to cause the death of or do serious bodily injury to the pregnant woman or the unborn child; or

(2) Knew that the acts taken would cause death or serious bodily injury to the pregnant woman or her unborn child; or

(3) When perpetrated without any design to effect death by a person engaged in the commission of any felony.

Fetal homicide is a Class B felony.

This section does not apply to acts which cause the death of an unborn child if those acts were committed during any abortion, lawful or unlawful, to which the pregnant woman consented."

SDCL 22–16–15 provides: "Homicide is manslaughter in the first degree when perpetrated:

(1) Without a design to effect death by a person while engaged in the commission of a misdemeanor involving moral turpitude;

(2) Without a design to effect death, and in a heat of passion, but in a cruel and unusual manner;

(3) Without a design to effect death, but by means of a dangerous weapon;

(4) Unnecessarily, either while resisting an attempt by the person killed to commit a crime or after such attempt shall have failed;

(5) Unnecessarily, either while resisting an attempt by a pregnant woman to either commit a crime or after such attempt shall have failed.

Manslaughter in the first degree is a Class 1 felony."

SDCL 22–16–20 provides: "Any reckless killing of one human being, including an unborn child, by the act or procurement of another which, under the provisions of this chapter, is neither murder nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree. Manslaughter in the second degree is a Class 4 felony."

2. Although neither chapter defines the term "fetus," the meaning can be ascertained by related *statutory definitions or via medical parlance.* SDCL 32–25–1.1 defines "fetal death" as "death prior to the complete expulsion or extraction from its mother of a product of human conception, irrespective of the duration of pregnancy[.]" Stedman's Medical Dictionary defines "fetus" as "the product of conception from the end of the eighth week to the moment of birth." Stedman's Medical Dictionary, 516 (23rd ed. 1976).

203 Ill.App.3d 465, 148 Ill.Dec. 567, 560 N.E.2d 1164 (1990), interpreted this statute as "creat[ing] a cause of action for the wrongful death of a fetus injured at any time after conception, thereby clearly establishing the status of the unborn child, for the purposes of the Act, as that of a 'person.'" *Id.* at 471, 148 Ill.Dec. at 571, 560 N.E.2d at 1168. The *Smith* court additionally held that viability of the fetus need not be established to maintain or carry the burden for recovery.[3] *Id.* at 478–80, 148 Ill.Dec. at 576, 560 N.E.2d at 1173.

[¶ 22] Evolving from case law, Georgia also recognizes a wrongful death action for a non-viable fetus. In *Porter v. Lassiter*, 91 Ga. App. 712, 716–17, 87 S.E.2d 100, 103 (1955), a Georgia court of appeals recognized that a cause of action exists after the fetus has "quickened," or movement occurs within the womb. All remaining jurisdictions sustaining the cause of action for previable fetuses, condition recovery on "live birth." *See* Nancy E. Field, Evolving Conceptualizations of Property: A Proposal to De–Commercialize the Value of Fetal Tissue, 99 Yale Law Journal, 169, 172–3 (1989) (citing *Danos v. St. Pierre*, 402 So.2d 633, 635 (La.1981); *Endresz v. Friedberg*, 24 N.Y.2d 478, 485, 248 N.E.2d 901, 904, 301 N.Y.S.2d 65, 70 (1969)).

[¶ 23] The overwhelming majority of jurisdictions, however, reject the existence of a wrongful death action for a fetus prior to viability. *Gentry v. Gilmore*, 613 So.2d 1241 (Ala.1993) (no cause of action for a 13–week fetus); *Ferguson v. District of Columbia*, 629 A.2d 15 (D.C.App.1993) (no cause of action for a non-viable fetus); *Humes v. Clinton*, 246 Kan. 590, 792 P.2d 1032 (1990) (no cause of action for death of a 12–week fetus); *Fryover v. Forbes*, 433 Mich. 878, 446 N.W.2d 292 (1989) (no cause of action for a 12–week fetus); *Rambo v. Lawson*, 799 S.W.2d 62 (Mo.1990) (no cause of action for a 12–week

fetus); *Wallace v. Wallace*, 120 N.H. 675, 421 A.2d 134 (1980) (no cause of action for a 12–week fetus); *Guyer v. Hugo Pub. Co.*, 830 P.2d 1393 (Okl.App.1991) (no cause of action for a 14–week fetus); *Coveleski v. Bubnis*, 535 Pa. 166, 170–72, 634 A.2d 608, 610 (1993) (no cause of action for an 8–week fetus); *Miccolis v. AMICA Mut. Ins. Co.*, 587 A.2d 67 (R.I.1991) (no cause of action for a 5–week fetus); *West v. McCoy*, 233 S.C. 369, 105 S.E.2d 88 (1958) (no cause of action for a 5–week fetus).

[¶ 24] "Viability is that stage of prenatal development at which the fetus [is] capable of independent existence if removed from its mother's womb." *McCaskill v. Housing Authority*, 419 Pa.Super. 313, 615 A.2d 382, 384 (1992) (citations omitted). The United States Supreme Court, in *Planned Parenthood v. Casey*, 505 U.S. 833, 857–60, 112 S.Ct. 2791, 2810–11, 120 L.Ed.2d 674 (1992), held that viability now occurs between 23–24 weeks of gestation, a conclusion well supported by medical literature.

[¶ 25] Despite similar language, none of the statutes in the majority of jurisdictions use the term "unborn child" as does South Dakota's. Instead, those jurisdictions deny the action based on interpreting the word "person," "minor child," or "one." *See Gentry*, 613 So.2d 1241; *Lollar v. Tankersley*, 613 So.2d 1249 (Ala.1993); *Guyer*, 830 P.2d 1393.

[¶ 26] In interpreting the language of South Dakota's statute, I agree with the comments of the Alabama Supreme Court in *Lollar* when it spoke of the differences between various statutory schemes:

The constructions placed by the courts in our sister states upon wrongful death legislation in their respective jurisdictions counsel caution in our consideration of the question whether a fetus that has never attained viability is a "minor child" within

---

**3.** The majority cites to the Illinois case of *People v. Ford*, 221 Ill.App.3d 354, 163 Ill.Dec. 766, 581 N.E.2d 1189 (1991). In this criminal case, the court was ruling on a claim that the criminal statute under which defendant was being prosecuted was unconstitutional in that it violated the equal protection clause. The *Ford* court, in upholding the constitutionality of this statute, pointed out that the legislature had defined in the criminal statute that an unborn child is "any individual of the human species from fertilization until birth." 163 Ill.Dec. at 775, 581 N.E.2d at 1198 (citing Ill.Rev.Stat. 1987, ch. 38, par. 9–1.2(b)(1)). The *Ford* court further went on to state that this definition erased any viability requirement in the criminal arena. In South Dakota, the legislature has also eliminated viability in the criminal arena. On the other hand, viability was not eliminated in the South Dakota wrongful death statutes.

**795**

the contemplation of [the Alabama Wrongful Death Act, AlaCode 1975, § 6–5–391].... Without a clearer expression of legislative intent, we are reluctant to hold that § 6–5–391 creates a cause of action for the wrongful death of a fetus that has never attained viability.

613 So.2d at 1252–53.

[¶ 27] The heart of the issue, in my opinion, is whether an action for wrongful death can stand where no sustainable life exists at the time of the negligent act. In considering this question, the District of Columbia Court of Appeals, in *Ferguson*, 629 A.2d at 17, stated:

> The concept underlying our survival statute is that the representative is merely bringing a lawsuit that decedent could have brought had he or she not died. Where the fetus emerges from the mother without the developmental capacity to survive, it would contradict the theory of a survival action to provide a cause of action to the representative of the fetus. Absent clear indication of contrary legislative intent, it would be anomalous to view an action as one that could have been brought by the fetus had the fetus not died when the fetus had never developed the capacity to survive in the first place.

[¶ 28] Wrongful death statutes are remedial in nature, created with the objective to provide a cause of action against those whose tortious conduct causes the death of another. *See Farley v. Mount Marty Hosp. Ass'n*, 387 N.W.2d 42 (S.D.1986). However, as the *Ferguson* court reasoned, it is illogical to recognize a cause of action for wrongful death where no sustainable life initially exists. 629 A.2d at 17. It is also inconceivable, absent specific legislative direction, how this court can extend a cause of action for wrongful death of a nonviable fetus, yet protect medical practitioners performing legal abortions from tort liability. SDCL ch. 32–23A.

[¶ 29] The parameters of South Dakota's wrongful death statute with regard to the unborn have been previously addressed in South Dakota. In *Farley*, this court held that a viable unborn child was a "person" within the meaning of SDCL 21–5–1.[4] *Id.* at 44. A wrongful death action was cognizable on the viable fetus' behalf. *Id.* Although the cause of action in *Farley* occurred prior to the 1984 amendment to SDCL 21–5–1, adding the clause "including an unborn child," the court referred to that amendment and supporting case law in finding a cause of action for "viable" unborn children.

[¶ 30] Wiersmas argue the statutory phrase "including an unborn child" should not be limited to "viability." However, without specific guidance from the legislature defining "unborn child," I would not sway from the majority of jurisdictions' rationale which limit the cause of action to that standard. I would limit a cause of action for wrongful death to a viable unborn "person"[5] and answer the Certified Question in the negative.

---

4. The certified question in *Farley* was: "Did SDCL 21–5–1, prior to its 1984 amendment, provide a cause of action for the wrongful death of a viable unborn child?" 387 N.W.2d at 43.

5. It is important to note that Mother still may have numerous causes of action for the loss she personally sustained from this ordeal.